**STATE of Minnesota, Respondent,**

v.

**Gary L. BLAND, Appellant.**

**No. CX–82–771.**

Supreme Court of Minnesota.

Aug. 12, 1983.

Rehearing Denied Sept. 27, 1983.

---

C. Paul Jones, State Public Defender, Robert D. Goodell, Asst. State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., William A. Neiman, Asst. County Atty., Minneapolis, for respondent.

AMDAHL, Chief Justice.

Defendant was found guilty by a district court jury of a charge of assault in the second degree, Minn.Stat. § 609.222 (1982) (assault with a dangerous weapon). Pursuant to Minn.Stat. § 609.11 (1982) and Minnesota Sentencing Guidelines and Commentary, II.E., the trial court sentenced defendant to 54 months in prison. Defendant appeals from judgment of conviction and from the order denying his motion for a new trial. Defendant seeks an outright reversal on the ground that the state failed to prove that he did not act in self-defense. Alternatively, he seeks a new trial on the grounds that (a) he was prejudiced because the prosecutor failed to call a witness referred to in the prosecutor's opening statement, (b) the trial court improperly restricted defense counsel's cross-examination of the victim about his prior acts of violence, (c) the prosecutor committed plain error in eliciting evidence that defendant's possession of the weapon he used, a sawed-off shotgun, was a separate crime, and (d) the trial court erred in its instructions on self-defense. We affirm.

This prosecution arose from an episode that occurred on the evening of Friday, October 9, and the morning of Saturday, October 10, 1981, in Minneapolis. Defendant and the victim, Jeffrey Larson, who were friends, became involved in an argument at their usual hangout, Moore on University. Police, who were called when the two became disruptive and disorderly, asked Larson and his brother to leave. Larson returned later and a fight ensued, with defendant throwing the first punch but with Larson getting the better of the fight before it was stopped by police. After the fight, defendant walked home. Some time later Larson went to defendant's residence and asked defendant why he had "sucker punched" him. Defendant then began to get up from where he was sitting and said, "I suppose you want to go outside." Larson replied, "That sounds about right." Larson testified that as defendant got up, defendant pulled out his sawed-off shotgun and, from a distance of 9 feet, fired it once.

Defendant, who was the only other witness to the actual shooting, testified that Larson woke him up and kicked him in the head notwithstanding his statement that he did not want to fight. He testified that after Larson banged his head on a chandelier and ripped the chandelier down, Larson stood about 8 or 9 feet away from him and said, "Come on, Gary." He testified that he then reached down, got the gun, aimed it at Larson's legs, and, without warning, fired it. He testified that he did not shoot to kill, just to stop Larson, that he did this because he feared that Larson was going to beat him up so severely that he would have to go to the hospital.

1. Defendant contends first that the state did not meet its burden of proving that the shooting was not in self-defense. Minn.Stat. § 609.06(3) (1982) allows the use of reasonable force by a person to resist or to aid another to resist an offense against the person. The person may use force to defend himself against an assault if he believes it to be reasonably necessary and if it would appear to a reasonable person under similar circumstances to be reasonably necessary, with the amount of force used to defend himself being limited to that which a reasonable person in the same circumstances would believe to be necessary. The state concedes on appeal that defendant reasonably believed that Larson was going to assault him but it argues that defendant's own testimony established that his response was unnecessary, unreasonable, and excessive. We agree. In fact, defendant admitted in his testimony that Larson was about 8 feet from him at the time of the shooting (which was consistent with Larson's testimony and the expert testimony), that Larson was standing still, and that he shot Larson without warning. Under the circumstances, the jury clearly was justified in concluding that the state had met its burden of proving that defendant did not act in self-defense.

2. Defendant's next contention is that he was prejudiced because a witness did not testify after the prosecutor told the jury in his opening statement that the witness would testify.

In *Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969), the prosecutor had been told by defense counsel that an accomplice, Rawls, might invoke the privilege against self-incrimination but had received apparently reliable information from another source that Rawls would testify against the defendant. Therefore, in his opening statement the prosecutor alluded to Rawls' expected testimony. The witness claimed the privilege and refused to testify. The defendant moved for a mistrial, which was denied. The trial court gave general limiting instructions to the effect that the statements of counsel were not evidence. Affirming defendant's conviction, the Court, while noting that a more specific limiting instruction might have been desirable but that it was not required, stated in relevant part as follows:

We believe that in these circumstances the limiting instructions given were sufficient to protect petitioner's constitutional rights. As the Court said in *Bruton*, 391 U.S. [123] at 135 [88 S.Ct. 1620, 1627, 20 L.Ed.2d 476], "Not every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions; instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently." See *Hopt v. Utah*, 120 U.S. 430, 438 [7 S.Ct. 614, 618, 30 L.Ed. 708] (1887). It may be that some remarks included in an opening or closing statement could be so prejudicial that a finding of error, or even constitutional error, would be unavoidable. But here we have no more than an objective summary of evidence which the prosecutor reasonably expected to produce. Many things might happen during the course of the trial which would prevent the presentation of all the evidence described in advance. Certainly not every variance between the advance description and the actual presentation constitutes reversible error, when a proper limiting instruction has been given. Even if it is unreasonable to assume that a jury can disregard a coconspirator's statement when introduced against one of two joint defendants, it does not seem at all remarkable to assume that the jury will ordinarily be able to limit its consideration to the evidence introduced during the trial. At least where the anticipated, and unproduced, evidence is not touted to the jury as a crucial part of the prosecution's case, "it is hard for us to imagine that the minds of the jurors would be so influenced by such incidental statements during this long trial that they would not appraise the evidence objectively and dispassionately." *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 239 [60 S.Ct. 811, 852, 84 L.Ed. 1129] (1940).

394 U.S. at 735–36, 89 S.Ct. at 1423 (footnote omitted).

█ In this case the jury knew that the state wanted to call one Weme, who aided Larson after Larson was shot, and the jury knew that he not only took the fifth amendment but that he did not appear later when he was supposed to appear and testify. However, contrary to defendant's argument, there is nothing in the record to suggest that Weme knew anything about the actual shooting itself or that the jury was led to believe that his testimony would shed any light on the actual shooting. Under the circumstances, we hold that defendant was not prejudiced by Weme's failure to testify.

3. Defendant's next contention is that the trial court improperly restricted defense counsel's cross-examination of the victim about his prior acts of violence.

In *State v. Keaton,* 258 Minn. 359, 104 N.W.2d 650 (1960), we noted that evidence of the victim's *reputation* for violence and quarrelsomeness may be admitted in self-defense cases for the purpose of determining (1) whether the defendant was reasonably put in apprehension of serious bodily harm or (2) who was the aggressor. Where the former purpose is involved, it is necessary that the defendant knew the victim's reputation, but where the latter purpose is involved, it is not necessary that the defendant knew the victim's reputation. We held in *Keaton* that evidence of a specific act of violence is not admissible to prove who was the aggressor. Later, in *State v. Matthews,* 301 Minn. 133, 221 N.W.2d 563 (1974), we held that evidence of a specific act of violence is admissible to prove that the defendant was reasonably put in apprehension of serious bodily harm, provided that the defendant knew about the prior act of violence. Then, in *State v. Taylor,* 258 N.W.2d 615 (Minn.1977), we dealt with the issue of the admissibility of evidence of the victim's past criminal record where the defendant claiming self-defense did not know of it. Our opinion made no attempt to write the final word on the subject but held that the convictions of simple assault and disorderly conduct did not, by themselves, indicate a violent or quarrelsome disposition.

Minn.R.Evid. 404(a) provides generally that "Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

(1) *Character of accused.* Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;

(2) *Character of victim.* Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor.

(3) *Character of witness.* Evidence of the character of a witness, as provided in rules 607, 608, and 609."

█ The general rule of exclusion of Rule 404(a) applies only when character evidence is used to show that a person acted in conformity with his character. Thus, when character evidence is used for some purpose other than to show that a person acted in conformity with his character, it does not apply. Rule 404(b) deals with some of the most usual instances in which character evidence may be admitted for some other purpose. It provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Rule 404(c) is a specific rule dealing with past conduct of the victim of sex offenses.

Rules 608 and 609 deal with the use of character evidence to show the character of a witness for truth or veracity.

Rule 405 deals with methods of proving character. It provides:

(a) Reputation or opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

(b) Specific instances of conduct. In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.

As stated in 2 D. Louisell and C. Mueller, Federal Evidence § 150 (1978) (footnotes omitted):

It is of course true that specific instances of conduct may be shown in a wide variety of circumstances which are not specified in Rule 405(b). These include: (i) Prior acts, including crimes and convictions, to show intent, knowledge, plan, and so forth pursuant to Rule 404(b); (ii) prior acts by a party (or events in his life), including crimes and even arrests, brought out pursuant to Rule 405(a) upon cross-examination of the party's character witness who has given character evidence to show the party's conduct under Rule 404; (iii) prior acts of a witness (or events in his life), whether or not a party, and again including crimes and even arrests, brought out pursuant to Rule 608 upon cross-examination of another witness who has testified to the character of the first for truth and veracity; and (iv) prior convictions of a witness, whether or not a party, elicited by way of cross-examination of the witness or established by public record during cross-examination, pursuant to Rule 609.

█ Rule 405(b) cannot be relied upon as justifying admission of specific evidence of prior acts of violence by the victim in a criminal case in which the defendant claims self-defense. Professors Louisell and Mueller state:

[It cannot be said] that specific instances of past violence by the victim may be proved where these are relevant *solely* as tending to show his probable actions at the time of the alleged crime. Rule 405(b) allows evidence of specific instances only where these amount to an "element of a charge, claim, or defense": It is clear that specific instances of the victim's past conduct do not amount to such an element in cases of homicide or criminal assault—they amount at most to circumstantial evidence that the victim was the first aggressor, and it is *this latter fact* which amounts to an element of the defense of self defense.

2 D. Louisell and C. Mueller, Federal Evidence § 139 (1978) (footnote omitted). However, they add that "If it can be established that the accused knew at the time of the alleged crime of prior violent acts by the victim, such evidence is relevant as tending to show a reasonable apprehension on the part of the accused. Since *this* is not the circumstantial use of character evidence to prove *conduct,* such use is not barred either by Rule 404 or by Rule 405." 2 D. Louisell and C. Mueller, Federal Evidence § 139 (1978). *See also* 11 P. Thompson, Minnesota Practice, Evidence § 404.04 (1979). Rule 404(b) provides another exception to the limit of Rule 405 on the use of evidence of specific acts in cases of this sort. Thus, if defendant offers the evidence not to show that the victim acted in conformity with his bad character but to show his intent, knowledge, plan, and so forth, the evidence is admissible under Rule 404(b).

█ In this case the trial court admitted a wealth of reputation evidence and evidence concerning specific past acts of violence by the victim, but defendant nonetheless claims that he was prejudiced by the trial court's limiting rulings with respect to two prior acts by the victim. One of these incidents was a 1977 act of damage to property and possession of an uncased rifle and the other involved a fight in the house of a friend, also in 1977. Defendant had no knowledge of the first incident and, in any event, the acts committed by the victim at

that time bear little, if any, relation to a predisposition for violence or quarrelsomeness. *State v. Taylor,* 258 N.W.2d 615 (Minn.1977). Detailed evidence was admitted concerning the second incident. With respect to the trial court's rulings on both items of evidence, it may also be said that, given the wealth of evidence that was admitted relating to the victim's violent past, it would be hard to find any prejudice even if there was error. Stated differently, the evidence excluded was cumulative evidence.

■ 4. Defendant also argues that the prosecutor committed plain error in eliciting evidence that defendant's possession of the weapon he used, a sawed-off shotgun, was a separate crime. In *State v. Underwood,* 281 N.W.2d 337 (Minn.1979), we reversed an aggravated assault conviction because the prosecutor improperly and over defense objection cross-examined the defendant about the fact that the gun he used was unregistered and the fact that it was a gross misdemeanor to possess it without a permit. In *State v. Swanson,* 307 Minn. 412, 240 N.W.2d 822 (1976), on the other hand, we held that a similar error was nonprejudicial, particularly in view of the trial court's cautionary instructions. In the instant case defense counsel did not object or move for a cautionary instruction. Further, the fact that the weapon used was a sawed-off shotgun was properly admitted and the jury probably knew, without being told, that it is illegal for citizens to possess one of these. Finally, defendant used the fact that his possession of the gun was illegal as an explanation for his incriminating post-act conduct, which included throwing the gun into the river. Clearly, therefore, defendant was not prejudiced by the admission of the evidence.

■ 5. Defendant's final contention is that the trial court's instructions were inadequate with respect to "retreat." The original version of CRIMJIG 7.08, which the defendant contends the trial court should have given, reads:

A person who has been attacked and who is exercising his right of self-defense is not required to retreat and he not only

may stand his ground and defend himself against the attack but may also pursue his assailant until he has secured himself from danger if that course appears to him, and would appear to a reasonable person in the same situation, to be reasonably necessary, and this is his right even though he might more easily have gained safety by withdrawing from the scene.

The original version was based on a misinterpretation by the drafters of the instruction of language which we used in *State v. Love,* 285 Minn. 444, 173 N.W.2d 423 (1970). *See State v. Jones,* 271 N.W.2d 534 (Minn. 1978). The amended version, which the trial court gave in this case, provides:

The legal excuse of self-defense is available only to those who act honestly and in good faith. This includes the duty to retreat or to avoid the danger if reasonably possible.

We hold that the trial court's instructions were correct and fairly informed the jury of the parameters of the law of self-defense in Minnesota. *State v. Duke,* 335 N.W.2d 511 (Minn., 1983).

Affirmed.