**STATE of Minnesota, Respondent,**

v.

**Timothy L. McGATH, Appellant.**

**No. C9–83–1680.**

Court of Appeals of Minnesota.

June 12, 1984.

Review Granted Sept. 11, 1984.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Alan L. Mitchell, St. Louis County Atty., John E. DeSanto, Asst. County Atty., Duluth, for respondent.

C. Paul Jones, Public Defender, Mark F. Anderson, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by SEDGWICK, P.J., and PARKER and CRIPPEN, JJ., with oral argument waived.

## OPINION

CRIPPEN, Judge.

Defendant appeals a judgment of conviction for assault in the second degree, Minn. Stat. § 609.222, including use of a weapon requiring a mandatory minimum term of imprisonment, § 609.11, subd. 4. He contends that evidence was insufficient to establish that he did not act in self-defense. He also claims the trial court denied him fundamental rights by questioning a sworn juror, who disclosed familiarity with a critical state's witness, in the absence of himself and counsel.

The state contends that private examination of the juror by the court does not constitute reversible error because defendant's counsel failed to demand the right to be present. The state also claims that appellant was not prejudiced by the procedure. Finally, the state maintains that evidence was sufficient to sustain the verdict of guilty.

We reverse and remand for a new trial.

## FACTS

Evidence showed a series of altercations among four men on a public street in downtown Duluth on the evening of 23 December 1982. Timothy L. McGath, defendant, and James Massey came to the scene of the incident early in the evening, after leaving a Christmas party where each man had consumed more than six drinks, beer and whiskey. Both were seated on bus stop benches at a downtown intersection.

Thomas Langdon, who had also consumed more than six beers at another party, drove by the intersection in his automobile. He was accompanied by Leonard Dobosenski, whom he had just picked up at Dobosenski's home. Langdon and Dobosenski were proceeding to meet friends at a lounge.

Langdon was acquainted with James Massey. As Langdon passed the intersection his attention was drawn to the conduct of Massey, who was slapping another man, Tom Solots, on one of the bus stop benches. Langdon and Dobosenski decided to stop and they approached the area of the benches. Massey informed them that he and Solots were only goofing around.

An altercation soon occurred between defendant McGath and Dobosenski. Dobosenski testified that McGath told him to leave, verbally threatened him and Langdon, and raised a walking cane in a striking position toward Dobosenski. McGath carried the cane because of a back injury. Dobosenski struck defendant, cutting his mouth and cheek and breaking two of his teeth. Both Dobosenski and Langdon were large men, each weighing 230 pounds or more. McGath denied provoking Dobosenski, and no other witnesses corroborated the testimony of Dobosenski.

Dobosenski and Langdon left the scene in Langdon's car, but further confrontation between the four men quickly occurred. As the men drove away, McGath and Massey approached the car and one or both of them either kicked or hit the car. Langdon drove away, but he made a U turn and returned to the area.

Langdon and Dobosenski left their vehicle and approached the other two men. Langdon admitted when testifying that he got out of the car "to get physical." Massey and McGath testified that the other

men left their car quickly and moved in a way so that it looked like there would be a fight.

Dobosenski testified that McGath held a knife with an exposed blade, and that Massey had McGath's cane. He described movements of McGath and Massey toward Langdon, who was between the two men and Dobosenski. Dobosenski further testified that McGath thrust the knife at Langdon's "mid-section," missing Langdon by three or four inches.

Langdon and Dobosenski ran from the scene. Massey and McGath started walking in the opposite direction. Langdon came back toward McGath and Massey, intending to protect his car. Dobosenski testified that McGath and Massey again came toward Langdon, and that McGath still had his knife. He testified that McGath made slashing motions at Langdon with the knife, and came within about four feet of Langdon. He went on to say that Langdon backed up; that McGath again came toward him, and that McGath then made slashing and stabbing motions that missed Langdon by inches. The men separated again and the altercation ended with the arrival of the police.

None of the other witnesses described McGath's use of a knife in the way depicted by Dobosenski. Langdon testified he could never fully visualize the knife, although he "knew" there was a knife there and he recalled Dobosenski warning him about a knife. Massey testified that he never saw McGath with a knife. McGath said he pulled out the knife and held it in the air "just to show him [Dobosenski]." Disinterested witnesses confirmed that McGath had a knife and that McGath and Massey came after Langdon. Two of these witnesses thought the knife was held in a way to indicate it was going to be thrown.

After the jury was impaneled and sworn for McGath's trial, a juror reported privately to the trial judge that her daughter was acquainted with the state's witness, Leonard Dobosenski. The juror said her daughter referred to this man by the nickname "Dobie," and that she did not recognize the name Leonard Dobosenski when it was read to the panel as a possible witness. The trial judge reported this situation to counsel.

Defense counsel explained his concern that Mr. Dobosenski was a key witness for the prosecution, and he moved for a mistrial.

The prosecutor suggested that the juror be questioned on actual bias in the presence of the court and counsel in chambers. Expressing concern for loss of his opportunity for a peremptory striking of the juror, defense counsel said the questioning could not solve the problem but that he would not oppose the procedure.

The trial court announced to the attorneys his plan to question the juror privately, on the record, without the presence of counsel or the defendant. Defense counsel did not interject an objection to the procedure.

The court interviewed the juror privately. She said that her daughter and her son knew Leonard Dobosenski, and that she knew him by the name "Dobie." She reported her knowledge was through an association with the children, and "not [on] a personal basis." These associations were with the juror's daughter (who is now married and has a baby) when she was younger, and with her son at some unstated prior time.

The juror reported she did not think these prior associations would have any bearing on her evaluation of Dobosenski's testimony. She said she hoped she could be fair to everybody, and that she wouldn't say that either party was at an advantage or disadvantage because of her knowledge of Dobosenski.

The trial judge described his interview to counsel and announced denial of the defense motion for mistrial. The questioned juror served as foreperson of the jury.

## ISSUES

1. Is the evidence sufficient to establish beyond a reasonable doubt that the appellant did not act in self-defense?

2. Did the trial court commit reversible error by refusing a defense motion for mistrial and by inquiring on juror bias outside the presence of defense counsel?

## ANALYSIS

### 1.

The Minnesota Supreme Court has established the standard for reviewing the sufficiency of evidence:

> In reviewing a claim of sufficiency of the evidence we must determine whether, under the facts in the record and any legitimate inferences that can be drawn from them, a jury could reasonable conclude that the defendant was guilty of the offense charged.... The evidence must be viewed in the light most favorable to the prosecution and it is necessary to assume that the jury believed the state's witnesses and disbelieved any contrary evidence.

*State v. Ulvinen*, 313 N.W.2d 425, 428 (Minn.1981).

The appellant is the one individual who suffered physical injuries in the altercation which led to his conviction. Because Leonard Dobosenski had struck and hurt him, he claims he reasonably and actually believed he was in danger when Dobosenski first returned to the scene and approached him. He claims the state did not meet its burden of proof on his claim of self-defense.

Minn.Stat. § 609.06(3) allows the use of reasonable force by a person "in resisting or aiding another to resist an offense against the person." The Minnesota Supreme Court, referring to the statutory provision, more specifically outlined the elements of self-defense in *State v. Bland*, 337 N.W.2d 378 (Minn.1983):

> The person may use force to defend himself against an assault if he believes it to be *reasonably necessary* and if it would appear to a reasonable person under similar circumstances to be *reasonably necessary*, with the amount of force used to defend himself being limited to that which a reasonable person in the same

circumstances would believe to be necessary. (emphasis added)

*Id.* at 381.

In that same case, the court also approved a jury instruction on self-defense that reads as follows:

> The legal excuse of self-defense is available only to those who act honestly and in good faith. This includes the duty to retreat or to avoid the danger if reasonably possible.

*Id.* at 384. This instruction was given here.

Finally, in *State v. Johnson*, 277 Minn. 368, 152 N.W.2d 529 (1967), a homicide case, the court noted that the excuse of self-defense requires the absence of aggression or provocation by the person claiming the excuse.

■ The state has the burden of proving that the defendant did not act in self-defense. In *State v. Harvey*, 277 N.W.2d 344 (Minn.1979), the Minnesota Supreme Court said:

> Clearly, once the defendant has raised the issue of justification the burden is on the state to prove beyond a reasonable doubt the absence of justification.

*Id.* at 345.

■ There was sufficient evidence to permit a jury to find that defendant did not act in self-defense. Taking the most favorable view of the state's testimony, its burden of proof was met. The jury could believe testimony that defendant had previously provoked and threatened Dobosenski and that he could not reasonbly claim he believed himself in danger upon the approach of Dobosenski. Further, the evidence supports a conclusion that the defendant could not feel endangered by the conduct of Langdon, who had not previously assaulted him. Because defendant repeatedly approached Langdon and Dobosenski, and because of the testimony concerning his attacks on Langdon, evidence was sufficient to permit the jury to conclude that defendant did not proceed in good faith, and that he did not pursue a reasonable alternative of retreat.

### 2.

■ On discovering that a sworn juror knew a critical witness, defense counsel first feared for defendant's loss of the opportunity for a peremptory challenge. His concern was appropriate since such challenges are "one of the most important of rights secured to the accused." *Pointer v. United States*, 151 U.S. 396, 408, 14 S.Ct. 410, 414, 38 L.Ed. 208 (1894). Still, we believe defendant was not entitled to a mistrial because he could not employ a peremptory challenge. The Rules of Criminal Procedure expressly contemplate the disqualification and replacement of jurors during trial without allotment of additional peremptory challenges. Rule 26.02, subd. 8, Minn.R.Crim.P.

We conclude, however, that the trial court erred in dealing privately with the prospect of the juror's actual bias.

The trial court action was an impermissible failure to provide for the presence of defendant's counsel during a critical part of the trial.

■ The right to assistance of counsel is guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution, *Herring v. New York*, 422 U.S. 853, 858, 95 S.Ct. 2550, 2553, 45 L.Ed.2d 593 (1975), and Article I, Sec. 6 of the Minnesota Constitution. The presence of counsel is required at all critical stages of the criminal proceeding, meaning "any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." *United States v. Wade*, 388 U.S. 218, 226, 87 S.Ct. 1926, 1931, 18 L.Ed.2d 1149 (1967).

Minnesota practice calls for the right to counsel in all court proceedings. At the first court appearance in a criminal case the judge states advice on a defendant's right to counsel "in all subsequent proceedings." Rule 5.01(b) Minn.R.Crim.P. The defendant is entitled to examine jurors on their qualifications, and this must be considered a critical stage of a trial. See Rule 26.02, subd. 4(3), Minn.R.Crim.P. His

rights can be no less when the replacement of jurors is considered under Rule 26.02, subd. 8.

■ Deprivations of the right to counsel are never harmless error. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1976); *Gideon v. Wainright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Given the absence of both counsel and the defendant during contacts of the trial court with a juror, we conclude that resulting error could not be harmless beyond a reasonable doubt.

Our decision is also compelled by the critical nature of the issue of actual bias which confronted the trial court. The juror was acquainted with the state's key witness. The jury would have to believe the testimony of this witness to convict the defendant.

Defense counsel believed, correctly, that the critical nature of Mr. Dobosenski's testimony aroused the prospect for mistrial. He stated to the trial court:

> Judge, first of all, I would say on the record, of course, that had [the juror] recognized the name [Dobosenski] at the time of the voir dire and brought up this fact, it certainly would have been my intention and I believe I certainly would have at least questioned her further concerning that relationship. Mr. Dobosenski is not a remote witness to this case and is one of the two, at least in my opinion, key witnesses for the prosecution, having been one of the two people involved in the altercation which brings these charges against Mr. McGath.
>
> . . . .
>
> I just feel that the testimony of Mr. Dobosenski is of such a nature in this case that any prior knowledge by any of the [jurors] of Mr. Dobosenski or any attitude which may paint him more favorable prior to going to trial would have been a very important area for me to know during the voir dire, and therefore while I'm very reluctant to do so, I am going to at this time move for a mistrial.

Respondent argues that defendant's objections to trial court contact with a juror were waived by the silence of defense counsel at the time the procedure occurred. We disagree. The court had before it at the time the motion of defense counsel for a mistrial. This motion had to be granted unless the situation was overcome by replacement of the juror or by finding after a proper inquiry that the juror was not biased. Even more important, we must remedy on appeal "plain errors or defects affecting substantial rights." Rule 31.02, Minn.R.Crim.P. There is a remedy on appeal for any error where failure to reverse would "perpetuate a substantial and essential injustice in the sense that as a result an innocent man may have been convicted." *State ex rel. Rasmussen v. Tahash*, 272 Minn. 539, 551, 141 N.W.2d 3, 11 (1965); *State v. Malaski*, 330 N.W.2d 447 (Minn. 1983). Having due regard for the importance of defendant's right for a trial by an impartial jury, we conclude that the error here is certain and substantial, one which perpetuates an essential injustice.

The trial court action was also an improper exclusion of defendant from an important part of the trial. Rule 26.03, subd. 1(1), Minn.R.Crim.P. provides:

> The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by these rules.

Although defendant should have been present during questioning of the juror, we are faced with a more serious issue in a case where his attorney was also absent. The presence of defense counsel in similar circumstances may prevent prejudice caused by exclusion of the defendant. *Kelsey v. State*, 298 Minn. 531, 214 N.W.2d 236 (1974).

## DECISION

We hold that the trial court committed reversible error in failing to provide for presence of defendant's attorney during questioning of a juror on the prospect of her actual bias.

Reversed and remanded for a new trial.