*This opinion will be unpublished and*
*may not be cited except as provided by*
*Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-0870**

State of Minnesota,
Respondent,

vs.

Doan Meshell Engel,
Appellant

**Filed May 23, 2016**
**Affirmed in part, reversed in part, and remanded**
**Worke, Judge**

Ramsey County District Court
File Nos. 62-CR-14-3766, 62-CR-14-9333

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Steven P. Russett, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Worke, Judge; and

Johnson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**WORKE**, Judge

Appellant challenges her assault convictions, arguing that the district court:

(1) erred by instructing the jury on the duty to retreat, (2) plainly erred by inadequately

responding to a question from the jury, (3) abused its discretion by prohibiting certain testimony, (4) abused its discretion by declining a downward sentencing departure, (5) erred by entering convictions for both assault counts; and (6) abused its discretion by awarding restitution. We affirm in part, reverse in part, and remand with instructions to vacate judgment of conviction on second-degree assault.

## FACTS

Appellant Doan Meshell Engel and R.G. started dating approximately 15 years ago and resided together in a home in St. Paul. In April 2014, Engel moved to California with her daughter. After Engel moved, R.G.'s son (R.G.J.), R.G.J.'s girlfriend, and the couple's infant daughter moved into the St. Paul residence with R.G.

On May 3, Engel returned to Minnesota, and she stayed in a hotel with R.G. the next night. On May 5, Engel and R.G. began arguing at the St. Paul residence after Engel told R.G. to clean the house. Engel subsequently called 911 and stated that R.G. "accidentally . . . got stabbed." Engel denied stabbing R.G., repeated that it was an accident, and stated that she was helping R.G. clean.

Officer Peter Baldwin arrived at R.G.'s residence after receiving a call that a male had been stabbed by his girlfriend. Engel told Officer Baldwin that she did not stab R.G and that she lives in California. Engel told Officer Nicole Obrestad that R.G. was bleeding as he entered the house from the backyard and that somebody stabbed him. Engel did not appear injured or request medical attention.

R.G. arrived at the hospital for emergency surgery. Medical staff concluded that R.G. had been stabbed in the chest by an object that penetrated his heart. On May 9,

2

Officer Nichole Sipes met with R.G. at the hospital. R.G. appeared groggy and slightly confused. R.G. told Officer Sipes that Engel resided in California. R.G. said that he was arguing with Engel on May 5 because he did not want to pay two mortgages. R.G. said that he previously pushed Engel but denied getting physical on May 5. On May 11, Officer Sipes spoke with R.G. again at the hospital, and R.G.'s condition appeared improved. R.G. said that he may have been physical with Engel, but he did not remember.

Engel was charged with first- and second-degree assault. A jury trial commenced, and R.G. testified that Engel moved to California and visited him in May 2014. When asked whether an argument occurred on May 5, R.G. stated: "There probably was because [R.G.J.] was living there and [Engel] wasn't in control of the house no more. She was living in California. . . . [T]hat was her little domain, and then now it wasn't hers no more . . . ."

Engel testified about prior incidents when R.G. physically abused her, but the testimony was admitted solely for demonstrating the nature and extent of the relationship. Engel testified that in 2012 R.G. choked her and knocked her out. Again in 2012, Engel testified, R.G. choked her, pulled her hair, and pushed her face to the ground. Engel also testified about another incident in 2013, wherein R.G. repeatedly struck her on the head. Engel testified that the abuse continued on numerous occasions in 2014.

Engel also testified that on May 5 the couple argued after she told R.G. to clean the house. Engel testified that R.G. choked her and dragged her into the kitchen. Engel told R.G. that he was going to jail and that she was going to call the police. Engel

3

testified that R.G. pushed her "really hard" up against the sink, pulled her hair, and said, "I should knock you out." Engel responded by cutting R.G. with a knife. Engel testified that she thought R.G. was going to kill her and that they had never fought like that before.

Numerous family members also testified about prior acts of violence between R.G. and Engel for the sole purpose of considering whether Engel was reasonably put in fear of serious bodily harm. Engel's sister testified that she previously observed R.G. choke Engel. Engel's mother testified that she previously observed R.G. knock Engel to the floor. Engel's daughter testified that she previously heard a "big boom," and saw that R.G. had slammed Engel against a wall and started to choke her.

Prior to instructing the jury, the district court concluded that the duty to retreat applied. Engel's attorney argued that the duty to retreat did not apply. The district court provided the following instructions on self-defense:

### Self-Defense—Death Not the Result

The defendant is not guilty of a crime if the defendant used reasonable force against [R.G.] to resist an offense against the person, and such an offense was being committed or the defendant reasonably believed that it was.

It is lawful for a person, who is being assaulted and who has reasonable grounds to believe that bodily injury is about to be inflicted upon the person, to defend from an attack. In doing so, the person may use all force and means that the person reasonably believes to be necessary and that would appear to a reasonable person, in similar circumstances, to be necessary to prevent an injury that appears to be imminent.

The kind and degree of force a person may lawfully use in self-defense is limited by what a reasonable person in the same situation would believe to be necessary. Any use of force beyond that is regarded by the law as excessive.

The state has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense.

The rule of self-defense does not authorize one to seek revenge or to take into his or her own hands the punishment of an offender.

**Self-Defense—Retreat**

The legal excuse of self-defense is available only to those who act honestly and in good faith. This includes the duty to retreat or avoid the danger if reasonably possible.

The jury found Engel guilty of both counts. The district court sentenced Engel on count one to a presumptive sentence of 86 months in prison. The district court stated that count two "would remain with a conviction from the jury but unadjudicated." The district court left restitution open for 30 days, stating that it was considering a restitution hearing. The district court then ordered Engel to pay $31,890.45 in restitution. This appeal follows.

**D E C I S I O N**

*Jury instruction*

Engel argues that the district court erred by including a jury instruction on the duty to retreat because whether the St. Paul residence was her home was a question of fact for the jury. District courts have "significant discretion to craft jury instructions." *State v. Devens*, 852 N.W.2d 255, 257 (Minn. 2014). A jury instruction is erroneous "if it materially misstates the law." *Id.*

"[A] person may act in self-defense if he or she reasonably believes that force is necessary and uses only the level of force reasonably necessary to prevent the bodily harm feared." *Id.* at 258; *see* Minn. Stat. § 609.06, subd. 1(3) (2014). A defendant bears

5

the burden of producing evidence to support a self-defense claim. *State v. Basting*, 572 N.W.2d 281, 286 (Minn. 1997). A self-defense claim contains four elements:

> (1) the absence of aggression or provocation on the part of the defendant; (2) the defendant's actual and honest belief that he or she was in imminent danger of death or great bodily harm; (3) the existence of reasonable grounds for that belief; and (4) the absence of a reasonable possibility of retreat to avoid the danger.

*Id.* at 285. But, when acting in self-defense, a person does not have a duty to retreat from her or his home. *State v. Glowacki*, 630 N.W.2d 392, 399 (Minn. 2001). If the defense is raised, the state bears the burden of disproving one or more of the elements beyond a reasonable doubt. *Basting*, 572 N.W.2d at 286.

The record shows that Engel did not reside in the St. Paul home. Engel agreed that she *permanently* moved to California before May 5, she enrolled her daughter in school in California, and she agreed on a separate occasion that she moved to California "months" before May 5. Engel also told Officer Baldwin that she lived in California.

Additionally, multiple witnesses testified that Engel lived in California. R.G. stated that Engel moved to California and was visiting in May. A friend of R.G. testified that Engel lived in California in 2014. R.G.J. testified that he moved into the St. Paul residence in April 2014 and, at the time, only R.G. lived there. R.G.J. also stated that Engel did not live in the house and that she lived in California. The district court did not abuse its discretion because the undisputed evidence would lead the jury to reach the only conclusion that the St. Paul residence was not Engel's home. *See State v. Soukup*, 656 N.W.2d 424, 431 (Minn. App. 2003) (stating that a factual dispute becomes a question of

law "when the evidence in the record is undisputed and leads . . . to a single conclusion"), *review denied* (Minn. Apr. 29, 2003).

***Jury question***

Engel argues that the district court committed "prejudicial plain error" by failing to adequately clarify the jury's question relating to the self-defense instructions. During deliberation, the jury asked: "Is 'self-defense-[d]eath not the result' [and] '[s]elf-defense-retreat' the same category or are they two different things? How do they relate to each other?" The district court proposed instructing the jury to direct their attention to the instructions previously given and to give the words used in the instructions their common and ordinary meaning. The parties did not object to the proposed instruction, and the district court instructed the jury accordingly.

Engel did not object to the district court's response, so we review for plain error. *See State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998) (reviewing for plain error when appellant did not object to jury instructions). Engel must demonstrate: "(1) error; (2) that was plain; and (3) that affected [her] substantial rights." *State v. Smith*, 825 N.W.2d 131, 138 (Minn. App. 2012), *review denied* (Minn. Mar. 19, 2013). If all three prongs are met, this court considers "whether it should address the error to ensure fairness and the integrity of the judicial proceedings." *Griller*, 583 N.W.2d at 740.

District courts have discretion to decide whether to reread previous instructions or give no response at all. *State v. Murphy*, 380 N.W.2d 766, 772 (Minn. 1986); *see* Minn. R. Crim. P. 26.03, subd. 20(3)(a) ("The [district] court *may* give additional instructions." (emphasis added)). "[I]f a jury is confused, additional instructions clarifying those

7

previously given may be appropriate since the interests of justice require that the jury have a full understanding of the case and the [applicable] rules of law." *Murphy*, 380 N.W.2d at 772 (quotation omitted).

Engel relies on *State v. Shannon*, in which the prosecutor made a statement in closing argument that was inconsistent with supreme court precedent, and urged the jurors to apply an improper standard. 514 N.W.2d 790, 792 (Minn. 1994). The supreme court described the statement as "improper, misleading, and confusing." *Id.* at 793. The jury asked for clarification, and the district court directed the jury to consider the instructions previously provided. *Id.* at 792. The supreme court granted the defendant a new trial because the prosecutor created the confusion, and the district court declined to correct it. *Id.* at 793.

Engel's reliance on *Shannon* is unpersuasive. Here, the district court's instructions are consistent with prior caselaw and the jury instruction guide. *See Basting*, 572 N.W.2d at 285 (listing elements for self-defense claim); *see also Glowacki*, 630 N.W.2d at 399 (stating that a person need not retreat from their home); 10 *Minnesota Practice*, CRIMJIGS 7.05, .06 (Supp. 2010). The jury also did not rely upon an "improper, misleading, and confusing" argument offered by the state.

Moreover, the jury already possessed an instruction that provided guidance to the question: "You must consider these instructions as a whole and regard each instruction in the light of all the others. The order in which the instructions are given is of no significance." *See State v. Crims*, 540 N.W.2d 860, 864–65 (Minn. App. 1995) (concluding that no plain error existed when referring the jury to the instructions and

stating that "[n]othing . . . indicates the jury was incapable of resolving its confusion by reference to the written instructions it already possessed"), *review denied* (Minn. Jan. 23, 1996).

Therefore, the district court did not commit plain error when it instructed the jury to direct its attention to the instructions previously given.

### *Prohibited testimony*

Engel argues that the district court committed "reversible error" by prohibiting her from testifying about R.G.'s alleged drug dealing, claiming that she was denied her right to testify and her right to present a complete defense. "A district court has broad discretion in evidentiary matters." *State v. Scruggs*, 822 N.W.2d 631, 643 (Minn. 2012). A district court's evidentiary ruling will stand absent a clear abuse of its discretion. *State v. Kelly*, 435 N.W.2d 807, 813 (Minn. 1989).

A defendant has the right to testify and the right to a meaningful opportunity to present a complete defense. *State v. Richardson*, 670 N.W.2d 267, 277, 282 (Minn. 2003). But these rights are not unrestricted. *See id.* at 277, 282. In exercising the right to present a defense, the defendant must comply with evidentiary rules "designed to ensure both fairness and reliability in the ascertainment of guilt and innocence." *Id.* at 277 (quotation omitted). When exercising the right to testify, the defendant must comply with evidentiary rules, but restrictions imposed on the right must not be "arbitrary or disproportionate to the purposes they are designed to serve." *Id.* at 282 (quotation omitted). A district court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

9

misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Minn. R. Evid. 403.

Here, the state moved to exclude any evidence referencing alleged drug dealing or drug use by R.G. Engel opposed the motion, arguing that on May 5, R.G. became violent after she threatened to tell the police about his alleged drug dealing. The district court granted the state's motion, stating that "the probative value of such evidence is substantially outweighed by the danger of unfair prejudice, as well as the danger or risk of misleading . . . and confusing the jury." The district court wanted to avoid having a "mini trial" over the extent of R.G.'s drug activities.

The district court did not abuse its discretion by limiting Engel's testimony. In *State v. Bland*, the appellant argued that the district court improperly restricted his attorney's cross-examination of the victim with regard to the victim's prior acts of violence. 337 N.W.2d 378, 382 (Minn. 1983). But the supreme court affirmed, stating that "given the wealth of evidence that was admitted relating to the victim's violent past, it would be hard to find any prejudice even if there was error. Stated differently, the evidence excluded was cumulative evidence." *Id.* at 384.

Similarly here, Engel testified about why the argument started, the argument's intensity, and that she threatened to call the police. The district court allowed testimony about prior acts of violence between R.G. and Engel. Engel's family members testified that they witnessed prior acts of physical violence. Moreover, the district court recognized the cumulative nature of the proposed drug-trafficking testimony, stating that

10

it was "one of multiple reasons for the altercation." Therefore, the district court did not abuse its discretion by prohibiting the proposed testimony.

***Presumptive sentence***

Engel argues that this court should reduce the district court's imposition of the presumptive sentence because she suffered years of physical and mental abuse by R.G. This court "afford[s] the [district] court great discretion in the imposition of sentences and reverse[s] sentencing decisions only for an abuse of that discretion." *State v. Soto*, 855 N.W.2d 303, 307–08 (Minn. 2014) (quotation omitted).

Minnesota's sentencing guidelines were created "to establish rational and consistent sentencing standards that reduce sentencing disparity." Minn. Sent. Guidelines 1.A (2012). District courts may depart from a presumptive sentence if "identifiable, substantial, and compelling circumstances" exist. *Id.* 2.D.1 (2012). Only a "rare case" warrants reversal of a district court's refusal to depart. *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981). This court will not "interfere with the sentencing court's exercise of discretion, as long as the record shows [it] carefully evaluated all the testimony and information presented." *State v. Pegel*, 795 N.W.2d 251, 255 (Minn. App. 2011) (quotation omitted).

Engel relies on *State v. Hennum*, in which, the defendant similarly argued that she was subjected to years of severe physical and mental abuse by her husband, the victim. 441 N.W.2d 793, 795, 801 (Minn. 1989). The defendant's injuries included a punctured lung, a ruptured spleen, and a broken nose. *Id.* at 795. After another beating, the defendant shot her husband, killing him. *Id.* at 795–96. The defendant was convicted of

second-degree felony murder and did not receive a downward departure. *Id.* at 797, 800. The supreme court reversed, stating that the case was a rare case in which an appellate court is "justified in interfering with the [district] court's decision not to downwardly depart." *Id.* at 801.

Engel's reliance on *Hennum* is unpersuasive. First, despite reversing the district court, the supreme court reaffirmed that it remains a "rare case" that merits reversal. *Id.* Second, a doctor examined the defendant in *Hennum* after the shooting, and she had "multiple abrasions, bruises, and a contusion." *Id.* at 797. Here, law enforcement indicated that Engel did not appear injured, and she did not request medical attention. Third, the evidence in *Hennum* indicated that the defendant suffered from battered-women's syndrome, psychoneurotic depression, and an antisocial personality disorder. *Id.* at 797. Here, the record does not establish that Engel suffered from the above-mentioned disorders.

Moreover, the supreme court has refused to reverse a presumptive sentence when there are "valid reasons for adhering to the presumptive sentence." *See Kindem*, 313 N.W.2d at 7–8 ("[W]hile there may have been arguments for departing downward, there were also reasons for not doing so. . . . [T]he determination whether . . . to depart was clearly a discretionary decision for the [district] court to make."). Here, the district court recognized that the record did not support Engel's claim that R.G. was the aggressor, and the district court also recognized the nature of R.G.'s injury. Therefore, the district court did not abuse its discretion by refusing to grant a downward departure.

*Warrant of commitment*

Engel argues that the district court erred by entering a "conviction" for both counts. "Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included offense, but not both." Minn. Stat. § 609.04, subd. 1 (2012). An included offense includes "[a] lesser degree of the same crime." *Id.*, subd. 1(1). A guilty verdict alone does not constitute a conviction. *Spann v. State*, 740 N.W.2d 570, 573 (Minn. 2007). Rather, a "conviction" occurs when a jury's guilty verdict is accepted and recorded by the court. Minn. Stat. § 609.02, subd. 5(2) (2012). The district court correctly stated that count two "would remain with a conviction from the jury but unadjudicated." But we are directed to examine the warrant of commitment to determine whether a conviction was entered. *See Span*, 740 N.W.2d at 573.

Here, the jury found Engel guilty of first- and second-degree assault. The warrant of commitment states that Engel is "convicted" for both counts. Under section 609.04, second-degree assault is an "included offense" of first-degree assault. *See State v. Hackler*, 532 N.W.2d 559, 559 (Minn. 1995) (vacating second-degree assault conviction because the defendant was also convicted of first-degree assault). Therefore, Engel's second-degree assault conviction must be vacated.

*Restitution*

Engel argues that the restitution orders must be vacated because they were issued without a hearing and without any indication that the district court considered her ability to pay. A district court has broad discretion to award restitution. *State v. Tenerelli*, 598 N.W.2d 668, 671 (Minn. 1999). This court reviews a district court's decision for abuse

13

of discretion. *State v. Miller*, 842 N.W.2d 474, 477 (Minn. App. 2014), *review denied* (Minn. Apr. 15, 2014).

When determining restitution, district courts shall consider "the income, resources, and obligations of the defendant." Minn. Stat. § 611A.045, subd. 1(a)(2) (2012). District courts are not required to issue specific findings on the defendant's ability to pay. *State v. Jola*, 409 N.W.2d 17, 20 (Minn. App. 1987). A defendant may challenge restitution, "but must do so by requesting a hearing within 30 days of receiving written notification of the amount of restitution requested, or within 30 days of sentencing, whichever is later." Minn. Stat. § 611A.045, subd. 3(b) (2012). The hearing request must be in writing and filed with the court administrator. *Id.* Restitution may not be challenged after the 30-day time period. *Id.*

Here, the district court left restitution open for 30 days, stating that it was contemplating having a restitution hearing to determine Engel's ability to pay. Engel did not address restitution at sentencing. On March 16, 2015, R.G. filed a request for restitution. The district court entered a restitution order on April 1 but amended its order on April 17. Engel neither filed an affidavit nor requested a hearing to dispute restitution. Appellate courts typically do not consider matters that were not argued to and considered by the district court. *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996); *see State v. Bauer*, 776 N.W.2d 462, 480 (Minn. App. 2009) ("Because Bauer failed to challenge restitution before the district court, his claim is procedurally barred."), *aff'd*, 792 N.W.2d 825 (Minn. 2011). Therefore, we will not consider Engel's restitution claim.

**Affirmed in part, reversed in part, and remanded.**

14