STATE v. JACOB TOURI.[1]

June 21, 1907.

Nos. 15,185—(13).

**Homicide—Self-Defense.**

 Defendant and another, for taking whose life defendant was convicted of manslaughter, had quarreled. Defendant went home and invited that other to come over to drink. Deceased came, unarmed in fact and so far as defendant knew, waving his hands and threatening. Defendant had procured a loaded pistol before he reached the screen door of defendant's house, and then shot and killed him. The court refused to charge that defendant was not bound to close the door and retreat behind it, but charged instead that defendant was not bound to flee, but had no right to kill in self-defense, unless such killing was apparently necessary to repel the assailant and to prevent some great personal injury to himself or forcible entry into his home, and otherwise modified the requests to charge. *Held* no prejudicial error.

From an order of the district court for St. Louis county, Ensign, J., denying a motion for a new trial, defendant appealed. Affirmed.

Defendant and appellant was convicted of manslaughter in the first degree. This appeal was taken from an order denying defendant's motion for a new trial. Defendant, a quiet, inoffensive man of good reputation and position, about fifty seven years of age, went on a Sunday morning with a bottle of whiskey to the residence of one Aijala, a powerful man, with a turbulent spirit, and about thirty years of age. The neighborhood drank freely. Aijala and the defendant quarreled. Defendant insisted that Aijala wanted defendant to give him money to buy beer, and that, on defendant's refusal, Aijala struck him and threw him to the ground. Defendant went across a ravine to his own abode and called out to Aijala, then eating dinner in his own home: "Come on, now, boys! I have still half a pint of whiskey to give you to drink. I am not mad" Aijala started. His wife, fearing trouble, went into another room. Aijala ran toward defendant's house, waving his hands and swearing. As he was coming up the hill, he said to the defendant:

[1]Reported in 112 N. W. 422.

"I will kill you in a minute." Defendant then went into another room, got a revolver, and came back to the screen door, which was fastened. Aijala was close to the door. He was in the act of coming to the edge of the door when he said: "I will kill you in a minute." Defendant testifies that he (defendant) said: " 'Don't come,' and I had the revolver pointed out. He said, 'Devil, I don't care for the revolver,' and came to the edge of the door and caught hold of the handle, and said, 'Now your last moments are counted.' At the same time I shot." Defendant shot through the screen door twice, instantly killing Aijala. Aijala was not armed. This occurred in the daytime. Gus Anderson was near at hand. Defendant surrendered himself to the authorities.

*Baldwin, Baldwin & Dancer,* for appellant.

*Edward T. Young,* Attorney General, and *John H. Norton,* County Attorney, for the State.

JAGGARD, J. (after stating the facts as above).

The case was tried with fairness and care. The only errors assigned concern the charge of the court to the jury. The principal assignment is addressed to the court's refusal to charge the jury at defendant's request as follows:

> The undisputed evidence is that the defendant was inside his own house of abode at the time he killed Aijala, and, if the said Aijala was attempting to enter said house for the purpose of assaulting the defendant, the defendant was not bound to flee from the house, nor was he bound to close the door and retreat behind it; but he had a right under such circumstances to resist the entrance, even to the taking of the life of the assailant, using only so much force, however, as should be necessary under the circumstances.

In lieu thereof the court charged:

> The undisputed evidence is that the defendant was inside of his own house of abode at the time he killed Aijala, and, if said Aijala was attempting to enter such house for the purpose of assaulting the defendant, the defendant was not bound to flee from the house.

The court also charged:

> It is claimed on the part of the state here that there was no necessity for this killing; that the defendant could have made himself safe by closing his doors, which were provided with locks; and you are to consider that in relation to the propositions of law which will follow. Did the deceased have any weapon, or anything with which he could demolish doors or break them down? Look at the nature of the door before him as an obstruction to the deceased. The state claims that there was a safe remedy for the defendant by shutting or locking his doors. And I say to you, gentlemen, as a matter of law, no one has a right to kill another in self-defense, unless such killing is apparently necessary to prevent some great personal injury to himself or to his home.

The court also charged

> We have always heard the old adage that a man's house was his castle, and that he had a right to defend it, which is true. But he must defend it in a reasonable manner, and upon this point I desire to say to you, as I have said upon the other, where one is assaulted in his own home, or the home is attacked, in the actual resistance of an attempt to commit a felony upon or in the dwelling or place of abode where he is, he may use such means as are necessary to repel the assailant from the home, or prevent his forcible entry or material injury to the home, even to the taking of life. But a homicide in such case would not be justifiable, unless the slayer, in a careful and proper use of his faculties, believes and has reasonable cause to believe that the killing is necessary to repel the assailant or prevent his forcible entry. Then, upon this clause of the statute, we come right back to the fact that the jury must judge whether there was reasonable cause—whether the defendant had reasonable cause to believe the killing was necessary to repel the assailant or prevent his forcible entry.

Counsel for defendant contends that this instruction "practically amounted to telling the jury that Touri was bound to shut or lock his

doors." In that construction we do not agree. The question present-
ed was not the academical one concerning the rights of a man "in his
own castle." The charge was formulated, not with reference to abstract
doctrine, but with reference to the justification of self-defense under the
circumstances of this particular case. Counsel for the state has ar-
gued, on the other hand, that one may not invite another to his own
home and shoot him down as he approaches, and that in this case, as a
matter of fact, the defense of self-defense should have been excluded as
a matter of law. This contention is also academical.

The court submitted the question of self-defense to the jury. The
jury found the defendant guilty. The only question presented by the
assignments of error addressed to this point is as to the correctness of
the charge actually given by the court and its applicability to the facts
in this case, viewed, as they must be. most favorably to the defendant.
It is to be remembered that this tragedy occurred between persons who
were well acquainted with each other; that the defendant, immediately
after a personal encounter, invited his victim to his house; that the vic-
tim came in response to that invitation, unarmed in fact and so far as
defendant knew; and that there were other persons present or near.
At the time the deceased was shot, he had not broken through the
screen door. He was ten feet or more from the screen door when he
threatened to kill the defendant. The defendant says he ran seven feet,
got the revolver, which was loaded, ran back seven feet, and stepped
two or three feet toward the screen door, and then shot, before Aijala
reached the door; that is, the defendant had gone sixteen feet before
his assailant had covered ten feet. It was with reference to these cir-
cumstances that it became the duty of the trial court to apply the doc-
trine of self-defense by one in his own domicile.

Considering the charge on this point as a whole, we think it gave
the jury no direction which would justify granting a new trial, within
the well-settled rule of practice of this court in criminal cases. See
State v. Nelson, 91 Minn. 143, 145, 97 N. W. 652; State v. Crawford,
96 Minn. 95, 104 N. W. 768, 822, 1 L. R. A. (N. S.) 839; State v.
Gardner, 96 Minn. 318, 324, 104 N. W. 971, 2 L. R. A. (N S.) 49.

Most of the authorities upon which defendant relies in this connec-
tion will be found to be sufficiently discussed for present purposes in
State v. Gardner, supra. We are unable to see how they justify the

claim of substantial prejudice.  The authorities in general, we think, sustain the charge given.  The part of it last quoted is in substance and form the language of the court in State v. Peacock, 40 Oh. St. 333. In State v. Patterson, 45 Vt. 308, 320, 12 Am. 200, it is said: "The idea that is embodied in the expression that 'a man's house is his castle' is not that * * * he has the right to defend and protect it by other and more extreme means than he might lawfully use to defend and protect his shop, his office, or his barn.  The sense in which the house has a peculiar immunity is that it is sacred for the protection of his person and of his family.  * * *  In this view it is said and settled that in such case the inmate need not flee from his house in order to escape from being injured by the assailant, but he may meet him at the threshold and prevent him from breaking in by any means rendered necessary by the exigency; and upon the same ground and reason as one may defend himself from peril of life or great bodily harm, by means fatal to the assailant if rendered necessary by the exigency of the assault."  Defense of one's self in one's habitation is subject to the same qualifications as to good faith in believing the danger imminent as is required elsewhere.  The defendant must himself have been without fault.  Hawk. P. C. 108.  He must not have renewed a combat once interrupted or abandoned.  People v. Filippelli, 173 N. Y. 509, 66 N. E. 402.

Also one may not defend an assault by a guest in his own house until he has given the guest notice to leave.  State v. McIntosh, 40 S. C. 349, 361, 18 S. E. 1033.  The undisputed evidence in that case was that the deceased was urgently invited to the house of the prisoner for the purpose of engaging in a Christmas frolic, and that they had engaged in a drunken debauch, which doubtless gave rise to the difficulty which ended in bloodshed.  The court said: "It does not seem to us that the defendant can claim anything from that well-recognized right which allows one to protect his house, where his invited guest was shot down in his own house without any notice, even, to leave."  A part of the charge of the trial judge sustained in that case was as follows: "A man must be without fault in bringing about a difficulty.  That is the first element to be shown to constitute self-defense.  * * *  You may go back * * * to the time that the invitation was extended to go to defendant's house.  Was the invitation genuine?  Was it for

the purpose of having mutual enjoyment, or was it for the purpose of getting the deceased to his house, and then slay him there?"

We have examined and considered the other assignments of error, and find in them no reversible error. They call for no discussion.

Order affirmed.