STATE of Minnesota, Respondent,

v.

Alvin DUKE, Appellant.

No. C5–82–774.

Supreme Court of Minnesota.

July 1, 1983.

C. Paul Jones, Public Defender, and Lawrence Hammerling, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey III, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., Vernon E. Bergstrom, Chief Appellate Section, Richard Osborne, J. Michael Richardson, Asst. County Attys., and Beverly J. Wolfe, Staff Atty., Minneapolis, for respondent.

COYNE, Justice.

Defendant was charged by indictment with first-degree premeditated murder. A district court jury found him guilty of the lesser included offense of second-degree intentional murder. The trial court sentenced defendant to 116 months in prison, which is the presumptive sentence for second-degree murder by a person with a zero criminal history score. On his appeal from judgment of conviction and the order denying his post-trial motion, defendant seeks an outright reversal on the ground that the state failed to prove that the killing was intentional and unjustified. Alternatively, he seeks a new trial, arguing that the prosecutor committed prejudicial misconduct in eliciting or attempting to elicit certain evidence and that the trial court

committed prejudicial error in its instructions on intent and retreat. We affirm.

Defendant shared an apartment with the victim, a woman with children whom he met in approximately 1975. At some point defendant met another woman and the victim moved out of the apartment and defendant's new friend began living with him. Then in December of 1981 defendant and the victim had a dispute over whether the apartment was hers. Defendant apparently agreed to move out and the victim moved back in. Shortly after noon on December 22 defendant went to the apartment, apparently to get some of his personal belongings which remained there. When defendant made sexual advances on her, the victim pulled out a handgun she had obtained from a relative. Defendant took the gun away from her and the victim apparently grabbed a scissors. A resident of the downstairs duplex apartment came upstairs and witnessed the events in question. He testified that he did not see the victim lunge at defendant, that she simply verbally dared defendant to shoot her and that defendant then pointed the gun at her head and fired from close range. Defendant's version was that the victim was lunging at him with the scissors and that he fired in self defense without intending to kill. The victim died immediately after being shot.

■ 1. Defendant's first contention is that his conviction should be reversed outright because the evidence of his guilt was legally insufficient. Our examination of the record satisfies us that the evidence was sufficient to support the jury's determination that defendant intentionally and unjustifiably killed the victim.

2. Defendant's alternative contention is that he should receive a new trial because of prosecutorial misconduct and/or error by the trial court in the instructions.

(a) Defendant makes several arguments in support of his claim of prosecutorial misconduct.

■ (i) First, he contends that the prosecutor violated a stipulation to the effect that the prosecutor would not produce evidence about the victim's claim to police that defendant was a pimp if defendant did not introduce evidence that the victim was a prostitute.[1] Defendant contends that the prosecutor violated this stipulation on cross-examination of him by asking him if the victim was not a prostitute, questions to which the trial court sustained objections. Defendant contends that by asking these questions immediately after skeptically questioning defendant about his own work,[2] the prosecutor was inviting the jury to speculate that defendant was a pimp.

In fact, it was the defense that first gave the jury reason to suspect that the victim was a prostitute. This occurred during direct examination of a defense witness, Robert Henry, a prison inmate who testified concerning several prior incidents in which the victim had been involved with him, evidence designed to show that the victim was capable of being violent. Defense counsel asked Henry about a particular incident that occurred near a motel in 1974 or 1975. Henry's response suggested that the victim had been involved in a prostitution-robbery scheme involving the soliciting of customers and taking them to a predetermined place for the purpose of being robbed.

It was later, in cross-examining defendant, that the prosecutor asked the questions which defendant argues violated the stipulation. It appears to us that the prosecutor in fact was trying to open up the subject of defendant's being a pimp. However, the trial court sustained objections to all the questions and that ended the matter. It does not appear likely that the jury inferred from the prosecutor's questions that de-

---

**1.** On December 20, two days before the incident, the victim, in trying to get police to aid her in evicting defendant from the apartment, told the police that she was a prostitute and had been working for defendant.

**2.** Defendant appears to contend that it was also improper for the prosecutor to even question him about his work. This is without merit, given the fact that defense counsel "opened the door" by questioning defendant about it on direct.

fendant was a pimp.[3]

■ (ii) Defendant's second claim of prosecutorial misconduct relates to the prosecutor's elicitation of evidence that the victim had children. Defendant argues that the prosecutor elicited this evidence in an attempt to evoke sympathy from the jury for the children and to the prejudice of defendant. Defendant preserved his claim of error by a motion to preclude any allusion to the victim's motherhood. The trial court properly denied the motion. Generally the prosecutor did not try to evoke sympathy on this point or to stir up the passions of the jury against defendant. However, at one point the prosecutor, while questioning defendant, implied that defendant did not want the children around him, but an objection to that question was sustained. Further, the defense took advantage of every available opportunity to run down the victim and show that she was a bad mother while at the same time showing that defendant had been like a father to the children.

■ (iii) Finally, defendant contends that the prosecutor improperly asked him on cross-examination if he had ever beaten the victim. The trial court overruled the objection to this question. Defendant never claimed that there was no factual foundation justifying the prosecutor's asking the question, only that it was irrelevant and prejudicial. Assuming that the prosecutor had some factual basis for asking the question, we do not believe that it was an objectionable question. It did not seek irrelevant, prejudicial evidence, given the fact that defendant testified to his own good character and given his testimony concerning prior acts of violence by the victim toward him. Stated differently, defendant not only introduced evidence of his own good character and patience and friendliness but opened the door to questions about his prior relationship with the victim by eliciting evidence of her violent conduct

within the relationship. *See United States v. Blitstein,* 626 F.2d 774, 783 (10th Cir. 1980). Beyond this, the question did not elicit any evidence that defendant had beaten the victim, since he denied that he had.

(b) Defendant's other contentions of trial error relate to the adequacy of the trial court's instructions on intent and the accuracy of the instructions on retreat.

(i) Defendant contends first that the trial court did not define "intent to kill" and that as a result of this failure the jury may have found defendant guilty of second-degree murder even though it concluded that defendant only intended to injure the victim.

In giving the elements of first degree and second-degree murder, the trial court relied on CRIMJIG 11.05. Unlike CRIMJIG 11.02 and CRIMJIG 11.09, CRIMJIG 11.05 does not define intent to kill. The result of giving CRIMJIG 11.05 rather than CRIMJIG 11.02, 11.04 and 11.09 was that the court did not define intent to kill.

Defense counsel requested instructions defining "specific intent" but the trial court refused those instructions, indicating that they were within the "elements" instruction that he planned to give. These requested instructions, however, did not define intent to kill any more than the court's instructions did. Further, defense counsel did not request CRIMJIG 11.02, 11.04 and 11.09 but requested CRIMJIG 11.05.

Thus the failure to define intent to kill was at least as much the fault of defense counsel as it was the fault of the trial court or the drafters of CRIMJIG 11.05, because defense counsel does not appear specifically to have requested an instruction defining intent to kill, nor did she object to the lack of such an instruction.

Minn.R.Evid. 103(d) allows us to do what we would have a right to do in any event, namely, take notice of an error in "fundamental law" or of "plain error affecting

---

**3.** Under the circumstances, we do not decide whether the prosecutor would have been justified in eliciting evidence that defendant was a pimp. We note, however, that a reasonable argument to that effect could be made, given the manner in which the defense counsel tried the case.

substantial rights" even though the appellant did not bring them to the attention of the trial court.

█ It is not clear to us that it is an error of "fundamental law" or "plain error" for the trial court to fail to define "intent to kill," particularly where the definition that would have been given arguably does not add much. Stated differently, the jury was told that "intent to kill" was an element of the offense, the phrase "intent to kill" is a phrase of common meaning, and the definition provided by CRIMJIG does not greatly increase the jury's understanding of the phrase.

We agree with defendant that it would have been better if the trial court had defined intent to kill and instructed the jury that intent to kill is not the same as intent to injure. It is clear, however, though that any error in failing to do so was not prejudicial. Defense counsel did make an argument that defendant did not intend to kill the victim, only to shoot her, but that was a weak argument given the evidence against defendant. The evidence of defendant's intent to kill was very strong, consisting of evidence that defendant pointed the gun and fired it at the victim's head at close range.

(ii) Defendant's other contention is that the trial court's instructions were inaccurate with respect to "retreat."

The court in its original instructions gave the original version of CRIMJIG 7.08, which read:

A person who has been attacked and who is exercising his right of self defense is not required to retreat and he not only may stand his ground and defend himself against the attack but may also pursue his assailant until he has secured himself from danger if that course appears to him, and would appear to a reasonable person in the same situation, to be reasonably necessary, and this is his right even though he might more easily have gained safety by withdrawing from the scene.

The state objected to this, pointing out that CRIMJIG 7.08 had been amended and that the amended version should have been given. The amended version reads:

The legal excuse of self defense is available only to those who act honestly and in good faith. This includes the duty to retreat or avoid the danger if reasonably possible.

The trial court agreed that he had inadvertently given the original version when he should have given the amended version and indicated that he would give the amended version if the jury asked for a rereading of the instructions. In fact, the jury did ask for a rereading of the instructions, and the court gave the jury written copies of the instructions, with the amended version of CRIMJIG 7.08 being substituted for the original version and with the jury not being told of the substitution. Defense counsel objected to this substitution.

█ The amended CRIMJIG 7.08 fairly informs the jury of the parameters of the law of self-defense in Minnesota. We therefore hold that the trial court properly gave the amended version of CRIMJIG 7.08 when it provided the jury with copies of the instructions. The original version of CRIMJIG 7.08 was based on a misinterpretation by the drafters of the instruction of language of this court in *State v. Love,* 285 Minn. 444, 173 N.W.2d 423 (1970). *See State v. Jones,* 271 N.W.2d 534 (Minn.1978) (former CRIMJIG 7.08 was not mandated).

In conclusion, we hold that the evidence of defendant's guilt was sufficient and that he received a fair trial.

Affirmed.