STATE of Minnesota, Respondent,

v.

Robert Earl CLAYBORNE, Appellant.

No. C6–86–1473.

Court of Appeals of Minnesota.

April 28, 1987.

Review Denied May 28, 1987.

Hubert H. Humphrey, III, Atty. Gen., Thomas Foley, Ramsey Co. Atty., Steven C. DeCoster, Asst. Co. Atty., St. Paul, for respondent.

C. Paul Jones, State Public Defender, Mark F. Anderson, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and LANSING and RANDALL, JJ., with oral argument waived.

## OPINION

LANSING, Judge.

Appellant Robert Clayborne was convicted of assault in the first degree, Minn.Stat. § 609.221 (1984), and possession of a short-barreled shotgun, Minn.Stat. § 609.67, subd. 2 (1984). He claims the court's instructions on self-defense were erroneous, that the court erred in admitting other crime evidence and that the evidence was insufficient to sustain his convictions. We affirm.

### FACTS

Robert Clayborne moved in with Della Baymon and her two children in the summer of 1985. Clayborne's and Baymon's relationship was marked by incidents of violence connected to Clayborne's jealousy of Lee Washington, a former boyfriend of Baymon and the father of one of her children. Baymon claimed that Clayborne had stabbed her in the leg and beaten her with a stick and his fists in arguments over Washington. Although Clayborne denied hitting her, he claimed that she begged him to beat her. He also admitted that he had once swung at her, missed, and broke a bone in his hand when it hit a cabinet. This incident was supported by a December 23, 1985, medical report.

On January 9, 1986, Baymon visited her cousins, Perry Ann Griffin and Denise Jones, at Griffin's home. Washington was also there. Clayborne called Baymon and asked her to come home. Later, he would not let Baymon go back to Griffin's house because he believed she really wanted to see Washington.

Instead, Jones and Washington came to Baymon's home. While Washington was there, he and Clayborne sat on separate couches without incident. Clayborne claimed that he saw a bulge in Washington's right pocket and was afraid because of prior threats. Washington and Jones left for Griffin's home, but Jones returned to spend the night with Baymon because Baymon feared Clayborne would harm her.

In a later telephone call between Baymon's and Griffin's homes, Washington talked with Clayborne. Clayborne accused Washington of seeing Baymon, which Washington denied. Washington said he would come over to discuss the situation. Clayborne claimed that Washington threatened to come over and "blow his brains out."

Washington left Griffin's home by cab. Meanwhile, Clayborne called his attorney, Todd Young, and asked if he could stay with Young because he was frightened of someone who was coming to the house. Young could not accommodate Clayborne. Clayborne put on his coat and ran down to the basement. When Washington arrived, Baymon went outside to talk him into leaving, but was unsuccessful.

Clayborne retrieved a sawed-off shotgun from the basement, loaded and cocked it, and went upstairs. As Baymon walked back to the front porch, she opened the screen door. She looked at Washington, who was standing just inside the front gate on the sidewalk. Washington's hands were raised, palms forward and gloves in his right hand. Clayborne pointed the shotgun

at him. According to Washington, Baymon and Jones, Clayborne fired one shot into Washington's chest from about 5–12 feet away.

Clayborne claimed he told Washington to stop and that Washington said "wait a minute" and took a step back and reached for something in his pocket. Clayborne said he was holding the screen door open with his foot with the gun pointed to the side and that he pushed Baymon, slipped, and the screen door then hit the shotgun, causing it to discharge.

Baymon and Jones testified that Washington made no reaching motion and held nothing but his gloves in his open hands. The police did not find a weapon on Washington.

After Washington was shot, Clayborne went back into the house, ejected the bullet, reloaded and told Baymon he should shoot her because it was her fault. According to Baymon, Clayborne pointed the gun at her while he said this.

Clayborne told Baymon to call his attorney and tell him that he just shot a man. When Baymon asked why he shot Washington, he said, "I didn't shoot him; fear shot him."

Clayborne's first words to the police officer were, "I had to shoot him. He threatened me." Later, Clayborne told police he was scared and the gun went off.

Clayborne was charged with first-degree assault (Washington), two counts of second-degree assault (Washington and Baymon) and possession of a short-barreled shotgun. He was convicted of all charges except assault of Baymon. The second-degree assault conviction against Washington was vacated pursuant to Minn.Stat. § 609.-04 (1984).

## ISSUES

1. Were the trial court's jury instructions on self-defense erroneous?

2. Did the trial court err in admitting evidence of prior acts of violence committed by appellant against one of the alleged victims?

3. Was the evidence sufficient to convict appellant of assault in the first degree and possession of a short-barreled shotgun?

## ANALYSIS

### I

■ Over defense objection, the trial court included the revised version of CRIM JIG 7.08 in its instruction on self-defense:

> The legal excuse of self-defense is available only to those who act honestly and in good faith. This includes the duty to retreat or avoid the danger if reasonably possible.

10 *Minnesota Practice*, CRIM JIG 7.08 (1985). The inclusion in the instruction of the duty to retreat "if reasonably possible" has consistently been upheld by the Minnesota Supreme Court. *State v. Morrison*, 351 N.W.2d 359, 362 (Minn.1984); *State v. Bland*, 337 N.W.2d 378, 384 (Minn.1983); *State v. Duke*, 335 N.W.2d 511, 515 (Minn. 1983); *see Johanson v. Pung*, 795 F.2d 48 (8th Cir.1986).

. Clayborne contends that the jury should not have been instructed that he had a duty to retreat because he was in his home during the altercation. Aside from the issue of whether Clayborne was a lawful possessor of the real property, Minn.Stat. § 609.06(4), this argument is not persuasive. The court rejected it under similar circumstances in *State v. Touri*, 101 Minn. 370, 373, 112 N.W. 422, 423 (1907). In *Touri* the defendant shot and killed an unarmed man from inside his screen door as the would-be assailant approached his house. The court upheld the instruction, which included language equivalent to a duty to retreat, saying Touri could have locked his door instead of leaving it open and shooting through the screen door.

In the present case the court instructed on the duty to retreat or avoid danger if reasonably possible and on the use of reasonable force to resist trespass. *See also State v. Bland*, 337 N.W.2d at 381. The instruction was both correct and, under the facts of this case, appropriate.

## II

■ Clayborne was also charged with pointing the gun at and threatening to shoot Baymon. The history of their prior relationship was fairly at issue, including any prior acts of violence committed by Clayborne against Baymon. The evidence admitted was relevant to Clayborne's intent and motive. *State v. Langley,* 354 N.W.2d 389, 397 (Minn.1984); *State v. Blanchard,* 315 N.W.2d 427, 431 (Minn. 1982).

■ The trial court is vested with discretion in determining whether the evidence was relevant and more probative than prejudicial. *State v. Kumpula,* 355 N.W.2d 697, 702–03 (Minn.1984). It was not unfairly prejudicial to Clayborne for the court to permit the evidence without prior hearing. *State v. Moyer,* 298 N.W.2d 768, 769 (Minn. 1980); *State v. Volstad,* 287 N.W.2d 660, 662 (Minn.1980). The references to the prior acts were relatively brief. Clayborne was acquitted of the charge of assaulting Baymon; it is unlikely the evidence created unfair prejudice.

## III

■ Clayborne does not challenge the conviction for possession of the shotgun. Rather, he claims the evidence established either that the shooting was accidental or that he acted in self-defense.

The standard for reviewing sufficiency of the evidence claims is well-settled:

> [W]e are limited to ascertaining whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged. * * * We cannot retry the facts, but must take the view of the evidence most favorable to the state and must assume that the jury believed the state's witnesses and disbelieved any contradictory evidence. * * * If the jury, giving due regard to the presumption of innocence and to the state's burden of proving the defendant's guilt beyond a reasonable doubt, could reasonably have found the defendant guilty, that verdict will not be reversed.

*State v. Merrill,* 274 N.W.2d 99, 111 (Minn. 1978).

When the case is based on conflicting testimony, it is the exclusive function of the jury to weigh the credibility of witnesses. *State v. Pieschke,* 295 N.W.2d 580, 584 (Minn.1980).

Clayborne presented two conflicting defenses: accidental shooting and intentional shooting done in reasonable self-defense. The jury could have reasonably found Clayborne acted with specific intent in firing the shotgun based on the testimony of Washington, Baymon and Jones. Clayborne told the officer when arrested, "I had to shoot him. He threatened me." Further, after the shooting Clayborne insisted on first calling his attorney rather than calling for medical assistance for Washington.

The jury also could have reasonably disbelieved Clayborne's claim that Washington was coming over to kill him. Clayborne escalated the controversy by retrieving a sawed-off shotgun from the basement. Clayborne's claim that just before the gun went off Washington was reaching toward his pocket was inconsistent with Baymon's and Jones' testimony. This claim is further doubtful because no weapon was found on Washington and it is unlikely he would have reached for a weapon he did not have. Clayborne could have avoided the confrontation by locking the house doors. *See Touri,* 110 Minn. 370, 112 N.W. 422. The evidence was sufficient for the jury to find the State proved Clayborne did not act in self-defense. *See State v. Siverhus,* 355 N.W.2d 398, 400 (Minn.1984); *State v. Bland,* 337 N.W.2d at 381.

### DECISION

Appellant's convictions for first-degree assault and possession of a short-barreled shotgun are affirmed.

Affirmed.