STATE of Minnesota, Respondent,

v.

Tony Lamar CAROTHERS,
petitioner, Appellant.

No. C8–98–86.

Supreme Court of Minnesota.

June 17, 1999.

John M. Stuart, Minnesota State Public Defender, Mark F. Anderson, Assistant State Public Defender, Minneapolis, for appellant.

Michael A. Hatch, Minnesota Attorney General, St. Paul, James Backstrom, Dakota County Attorney, Debra E. Schmidt, Assistant Dakota County Attorney, Hastings, for respondent.

OPINION

RUSSELL A. ANDERSON, Justice.

Appellant Tony Lamar Carothers was convicted of second-degree felony murder in violation of Minn.Stat. § 609.19, subd. 2(1) (1998), and sentenced to 165 months' confinement. He argues that the trial court erred in instructing the jury that he had a duty to retreat before using deadly force to prevent the commission of a felony in his dwelling. We hold that the duty to retreat does not attach to defense of dwell-

ing claims,[1] and that it was error for the trial court to instruct the jury that appellant was under a duty to retreat from his home before using deadly force to prevent the commission of a felony, first-degree burglary, within his home. Further, we hold that the trial court's erroneous instruction had a significant impact on the jury's verdict, and we therefore reverse appellant's conviction and remand this case for a new trial in accordance with our ruling.

This case arises from the shooting death of Kevin Lee. Sometime between Thanksgiving and Christmas of 1997, appellant moved into the trailer home owned by his girlfriend's mother. He lived there with his girlfriend Kayce Liebrecht, her 13–year–old brother, and her mother. The day that appellant moved in, Kayce's ex-boyfriend threatened to blow up the trailer and shoot everyone in it. Soon after, appellant purchased a .25 caliber handgun to protect the household. To prevent Kayce's 13–year–old brother from gaining access to the gun, appellant generally kept the gun on his person.

Shortly after he moved in, appellant met Kayce's neighbor's friend, Kevin Lee. Lee, nicknamed "Big Lee," was 6' tall, weighed 260 pounds, and had a muscular build.[2] Lee also owned a .45 handgun. A member of the Gangster Disciple gang, Lee bragged that he was a gang enforcer, meaning that he physically assaulted gang members to insure gang discipline. Lee had a reputation in the neighborhood as a violent and ruthless person who became even more intimidating when drunk.

On the night of the shooting, Lee and his cousin Rodney Lee went to appellant's house to play cards with appellant and Kayce. Over the next few hours, marijuana was smoked and everyone drank alcohol. Lee consumed all the beer he brought and became angry when appellant and Kayce charged him for additional beer and brandy. Some of Kayce's friends stopped by during the evening, and Kayce showed them appellant's handgun in the bedroom before they left. Kayce then returned the gun to appellant.

Later that night, Kayce and appellant decided to stop playing cards. Lee claimed that Kayce and appellant owed him twenty dollars on the last card game, and an argument erupted. Kayce's mother put a twenty dollar bill on the kitchen table and told her son to give it to Lee. Lee took the money from Kayce's brother and left with Rodney.

Kayce did not notice her brother giving Lee the twenty dollars, and she became angry upon learning of it. She wanted to follow Lee to retrieve the money, but appellant persuaded her not to leave. After Lee and Rodney left, only Kayce, her mother, her brother, and appellant remained in the trailer.

From this point on, accounts of the evening differ. Rodney claimed that he and Lee went to visit appellant's neighbor, but the neighbor did not let them in because Lee was drunk. They returned to appellant's house and entered after knocking. Rodney testified that appellant was holding his handgun when they entered. He stated that appellant asked them why they had taken the twenty dollars, and that Lee took off his coat and asked appellant why he had the gun out. Lee became angry because appellant was displaying his gun,

---

1. Defense of dwelling refers to the defense authorized by Minn.Stat. §§ 609.06, subd. 1(4), 609.065 (1998), which allows a person to use deadly force to prevent the commission of a felony within his or her place of abode. As used in this opinion, self-defense within the home refers to the defense authorized by Minn.Stat. §§ 609.06, subd. 1(3), 609.065

(1998), which allows a person to use deadly force in self-defense if he or she fears great bodily harm or death.

2. Appellant is 5' 8 1/2" tall and weighs 150 pounds.

and began walking toward appellant. Appellant then shot Lee until Lee turned and fell.

Appellant and Kayce's brother claimed that Lee and Rodney entered the trailer without knocking. Kayce's brother and mother testified that the argument about the twenty dollars resumed upon the Lees' entry. According to Kayce's brother, appellant tried to calm the situation, but Lee removed his coat and began talking about "stepping up," meaning he was going to fight appellant. Kayce's brother was afraid that Lee would "beat [appellant's] ass." However, as Lee neared to within arm's reach of appellant, appellant shot Lee six times, killing him.

The medical examiner testified that up until Lee collapsed, he would have been able to cause physical harm to others, and that the force of impact from the .25 caliber bullets would not have caused Lee to collapse immediately. Rodney testified that Lee did not collapse to the floor until after the last shot was fired.

Appellant was indicted for first-degree premeditated intentional murder, second-degree intentional murder, and second-degree felony murder. At trial, appellant acknowledged intentionally shooting Lee but claimed that he acted in self-defense and in defense of his dwelling. The trial court instructed the jury on both defenses, referring to the defense of dwelling as self-defense in one's abode. Over defense counsel's objection, the court instructed that for both self-defense and self-defense in one's abode the appellant had a duty to retreat if reasonably possible. During its deliberations, the jury asked:

> Does the self defense retreat duty of retreat [sic] apply to self defense causing death in place of abode?

The trial court answered the question over the objection of defense counsel:

> The legal excuse of self defense is available only to those who act honestly and

in good faith, even in one's place of abode. This includes the duty to retreat or avoid the danger if reasonably possible.

One hour after the question was answered, the jury returned guilty verdicts to second-degree felony murder and a lesser-included offense of first-degree heat of passion manslaughter. Since the offenses arose from the same behavioral incident, the trial court properly entered conviction for the greater offense of second-degree felony murder and sentenced appellant to the presumptive sentence of 165 months' confinement.

On appeal, appellant argued that the trial court erred in instructing the jury that there is a duty to retreat before using deadly force to defend one's place of abode. The court of appeals affirmed appellant's conviction, holding that the duty to retreat applies to defense of dwelling claims when "the facts indicate only a defense of self within the dwelling, and * * * the victim has already been admitted to the home." *State v. Carothers,* 585 N.W.2d 64, 67 (Minn.App.1998).

## I.

■ Trial courts have considerable latitude in selecting the language of jury instructions so long as the instructions do not materially misstate the law. *State v. Pendleton,* 567 N.W.2d 265, 268 (Minn. 1997).

■ Minnesota has recognized that a person who kills another in self-defense must have attempted to retreat if reasonably possible. *See State v. Buchanan,* 431 N.W.2d 542, 548 (Minn.1988); *State v. Austin,* 332 N.W.2d 21, 24 (Minn.1983). Appellant distinguishes his claim, asserting that there is no duty to retreat before using deadly force to prevent the commission of a felony in one's home. The state argues that self-defense within the home

and defense of dwelling are so similar that defense of dwelling must incorporate the self-defense duty to retreat.

Although self-defense retreat requirements were debated in common law, it was settled that there was no duty to retreat while in or defending one's dwelling. *Cf.* 1 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law*, § 5.9(b) (1986); Rollin M. Perkins, *Self–Defense Re–Examined*, 1 UCLA L.Rev. 133, 150–53 (1953). The special status of the home has persisted over time, obviating retreat requirements for people engaging in self-defense within their homes. " 'It is not now and never has been the law that a man assailed in his own dwelling is bound to retreat. If assailed there, he may stand his ground and resist the attack. He is under no duty to take to the fields and the highways, a fugitive from his own home.' " *Gainer v. State*, 40 Md.App. 382, 391 A.2d 856, 862 (1978) (quoting *People v. Tomlins*, 213 N.Y. 240, 107 N.E. 496, 497–98 (1914)).

Minnesota has long adhered to the common law recognition of the home's importance, holding that "the house has a peculiar immunity [in] that it is sacred for the protection of [a person's] family." *State v. Touri*, 101 Minn. 370, 374, 112 N.W. 422, 424 (1907); *see also State v. Hare*, 575 N.W.2d 828, 832 (Minn.1998) (citation omitted) (noting that at common law "defense of the home [was] considered equivalent to defense of life itself"). A resident has traditionally been empowered to use force, even deadly force, when necessary to protect the home. *Hare*, 575 N.W.2d at 832.

Minnesota's codifications of the common law defenses of dwelling and self-defense state in pertinent part:

[R]easonable force may be used upon or toward the person of another without the other's consent when the following circumstances exist or the actor reasonably believes them to exist:

* * * *

(3) when used by any person in resisting or aiding another to resist an offense against the person; or

(4) when used by any person in lawful possession of real or personal property, or by another assisting the person in lawful possession, in resisting a trespass upon or other unlawful interference with such property.

Minn.Stat. § 609.06, subd. 1(3)-(4).

The intentional taking of the life of another is not authorized by section 609.06, except when necessary in resisting or preventing an offense which the actor reasonably believes exposes the actor or another to great bodily harm or death, or preventing the commission of a felony in the actor's place of abode.

Minn.Stat. § 609.065.

Minnesota statutes have never addressed whether a duty to retreat attaches to defense of dwelling or self-defense claims. However, early Minnesota caselaw rejected a duty to retreat in cases of self-defense occurring in one's home. *See State v. McPherson*, 114 Minn. 498, 131 N.W. 645 (1911) (overturning murder conviction because jury was improperly instructed that defendant had a duty to retreat from his bunkroom); *Touri*, 101 Minn. at 374, 112 N.W. at 424 (a person "need not flee from his house in order to escape injury by the assailant"). While caselaw did not separately address defense of dwelling, courts were fiercely protective of the home as a sanctuary.

Over time, defense of dwelling and self-defense have not been clearly distinguished in Minnesota caselaw. *See generally State v. Sanders*, 376 N.W.2d 196, 200–01 (Minn.1985) (giving substantially same jury instruction for self-defense and defense of dwelling claims). However, two recent cases have distinguished self-defense from defense of dwelling, and they

provide focus in analyzing whether a person claiming defense of dwelling should have a duty to retreat.

In *State v. Pendleton,* when an uninvited visitor to the defendant's home attacked the defendant and refused to leave the home, the defendant shot and wounded the visitor. *Pendleton,* 567 N.W.2d at 267. He pled both self-defense and defense of dwelling, and the trial court instructed the jury on both defenses. In differentiating the two defenses, we analyzed our statutes on self-defense and defense of dwelling involving deadly force. *Id.* at 268–69. Section 609.065 states that one may kill in self-defense "when necessary in resisting or preventing an offense which the actor reasonably believes exposes the actor or another to great bodily harm or death," and that one may kill in defense of dwelling when "preventing the commission of a felony in the actor's place of abode." We therefore held that self-defense and defense of dwelling diverge in at least one of their elements – to kill in self-defense a person must fear great bodily harm or death while to kill in defense of one's dwelling a person must be acting to prevent the commission of a felony within the person's dwelling. *Pendleton,* 567 N.W.2d at 269.

*State v. Hare* also addressed defense of dwelling. There, the defendant was convicted of killing his housemate after he intervened in a domestic dispute between his housemate and his housemate's girl-friend. *Hare,* 575 N.W.2d at 829–31. The defendant claimed that the trial court erred in instructing the jury that defendant had to fear either death or great bodily harm before using deadly force in defense of his dwelling. *Id.* at 831. We agreed that the trial court erred in in-structing the jury that the defendant had to fear great bodily harm or death before using deadly force to prevent the commission of a felony in his home. However, we went on to explain that defense of dwelling is not available to co-residents of the same dwelling.[3] *Id.* at 832. Reasoning that defense of dwelling stems from the common law precept that a man's home is his castle, we stated that defense of dwelling permits a resident " 'to use deadly force against an *intruder* who the resident reasonably believes intends to commit a felony * * *.' " *Id.* (quoting J. David Jacobs, *Privileges For the Use of Deadly Force Against a Residence–Intruder: A Comparison of the Jewish Law and the United States Common Law,* 63 Temp. L.Rev. 31, 46 (1990)).

■ *Pendleton* demonstrates that a duty to retreat is inconsistent with the authority to prevent the commission of a felony in one's home. *Hare* clearly reaffirms the sanctity of the home, *Hare,* 575 N.W.2d at 832, and *Pendleton* clarifies that, even absent fear of great bodily harm or death, a person may use deadly force to prevent the commission of a felony in one's home, *Pendleton,* 567 N.W.2d at 269. These holdings are logically incompatible with a duty to retreat, which would effectively preclude a person from preventing a felony in the home. Mandating a duty to retreat for defense of dwelling claims will force people to leave their homes by the back door while their family members are exposed to danger and their houses are burgled. Further, forcing a resident to retreat from the home is at odds with the historical notion of the home as a place critical for the protection of the family. A duty to retreat is incompatible with the right to prevent the commission of a felony within one's home.

---

3. Defense of dwelling is only available to one "resisting a trespass" upon his or her property. Minn.Stat. § 609.06, subd. 1(4); *see also Hare,* 575 N.W.2d at 832. A trespasser is defined as one who "trespasses on the prem-ises of another and, without claim of right, refuses to depart from the premises on demand of the lawful possessor." Minn.Stat. § 609.605, subd. 1(b)(3) (1998).

The court of appeals relied on four cases to support its holding that defense of dwelling includes a duty to retreat. However, closer examination of each of these cases shows that they are inapposite. The court of appeals first cited *State v. Sanders* to support the proposition that there is a duty to retreat when a person uses deadly force in self-defense within the home. In *Sanders*, the defendant was accused of killing his brother who allegedly barged into the defendant's house and attacked him. *Sanders*, 376 N.W.2d at 201. The defendant claimed both self-defense and defense of dwelling, and the trial court instructed the jury that a duty to retreat applied to both defenses. *Id.* at 200–01. However, the defendant conceded that a duty to retreat applied to both his self-defense and defense of dwelling claims so we did not address whether a duty to retreat attached to defense of dwelling. *Id.* at 201.

The court of appeals next stated that *State v. Schluter*, 281 N.W.2d 174 (Minn. 1979), upheld a retreat requirement for self-defense within the home. The supreme court's decision in *Schluter* does not indicate the substance of the retreat instruction given at trial. *Id.* at 177. Closer examination of *Schluter*'s record discloses that the jury instruction actually given did not call for a duty to retreat but rather empowered the defendant to stand his ground.[4]

The court of appeals also relied on *State v. Morrison*, 351 N.W.2d 359 (Minn.1984). In *Morrison*, after defendant argued with her boyfriend, the boyfriend's roommate was admitted into defendant's house. Without warning, defendant grabbed a butcher knife and killed the boyfriend's roommate. *Id.* at 360. The court instructed the jury that the defendant had a duty to retreat if reasonably possible before using deadly force in self-defense. *Id.* at 362. We summarily upheld the jury instruction without discussing both that the killing occurred within the defendant's home and that the victim was not an intruder. Therefore, *Morrison* does not mandate that a duty to retreat attach to a defense of dwelling case.

Finally, the court of appeals relied on *State v. Hennum*, 428 N.W.2d 859 (Minn. App.1988), *aff'd in part, rev'd in part*, 441 N.W.2d 793 (Minn.1989). In *Hennum*, defendant shot and killed her husband in their home after an altercation between them. The court instructed the jury that there is a duty to retreat in self-defense cases. *Id.* at 866. The court of appeals upheld the trial court's instruction, stating "Minnesota has retreated from [the] free-wheeling concept of self-defense" in which there is no duty to retreat when engaging in self-defense within the home. *Id.* at 867. Without discussion and by footnote, we affirmed the court of appeals' conclusion that the trial court properly instructed the jury on the law of self-defense. *Hennum*, 441 N.W.2d at 800 n. 5. However, *Hennum* involved a dispute between co-occupants of the house. Our summary affirmance of the duty to retreat in a self-defense case between co-occupants does not mandate a duty to retreat in defense of dwelling cases.

The court of appeals relied on a number of cases involving self-defense within the home in order to justify grafting a duty to retreat onto defense of dwelling claims because of the similarities between many situations involving self-defense within the home and defense of dwelling. Our holding that there is no duty to retreat in

---

**4.** The actual instruction at trial, given in response to a jury question regarding the duty to retreat, stated: "A person who has been attacked and who is exercising his right of self-defense * * * is not required to retreat and he not only may stand his ground and defend himself * * * against the attack, but may also pursue his assailant until he has secured himself."

defense of dwelling claims and the frequent similarity between self-defense within the home and defense of dwelling claims compel us to examine the duty to retreat as applied to cases involving self-defense within the home.

In *State v. Gardner*, 96 Minn. 318, 327, 104 N.W. 971, 975 (1905), we first endorsed the duty to retreat in a case of self-defense involving deadly force occurring outside the home. While we reaffirmed the duty to retreat before using deadly force in self-defense outside the home in *State v. Johnson*, 277 Minn. 368, 373, 152 N.W.2d 529, 532 (1967), Minnesota's jury instruction guide continued to recommend that trial courts instruct juries regarding the duty to retreat as follows: "A person who has been attacked and who is exercising his right of self-defense is not required to retreat and he not only may stand his ground and defend himself against the attack but may also pursue his assailant until he has secured himself from danger * * * ." 10 Minn. Dist. Judges Ass'n, *Minnesota Practice*, CRIMJIG 7.08 (1st ed.1977); *State v. Love*, 285 Minn. 444, 450–51, 173 N.W.2d 423, 427 (1970) (upholding jury instruction indicating no duty to retreat for self-defense occurring outside the home).[5] Recent cases involving self-defense within the home, like *Morrison* and *Sanders*, may be interpreted to endorse a duty to retreat even within the home but, as discussed earlier, before *Pendleton* and *Hare* our cases had not specifically distinguished self-defense occurring within the home from defense of dwelling.

*Pendleton*, which states that self-defense in the home involving deadly force is permitted when the resident is in fear of great bodily harm and defense of dwelling involving deadly force is permitted to prevent the commission of a felony, supports the conclusion that self-defense in the home should not incorporate a duty to retreat. We cannot ignore the anomaly of requiring a duty to retreat for self-defense within the home but not requiring a duty to retreat for defense of dwelling. To require a person claiming self-defense to retreat but not require a person claiming defense of dwelling to retreat would provide greater protection to a person safeguarding property than to a person safeguarding life. As the law clearly values life above property, a person claiming self-defense within the home should not have a duty to retreat before using deadly force.

Further, defense of dwelling and self-defense within the home claims will often blur. For example, in *Pendleton* the defendant claimed both self-defense and defense of dwelling to prevent a felony assault in his home. When events occur in a defendant's home, the factual requisite for self-defense using deadly force—fear of great bodily harm—can often also be expressed as the factual requisite for defense of dwelling, prevention of a felony assault or burglary. The existence of a duty to retreat should not turn on the label attached to the defense.

Having concluded that the imposition of a duty to retreat would be improper in defense of dwelling situations, we see no sound reason to impose a duty to retreat when those same circumstances are characterized as self-defense within the home. Because the issue of the duty to retreat

---

5. Later cases classified the 1977 CRIMJIG 7.08, which stated that there is no duty to retreat when engaging in self-defense using deadly force, as a misinterpretation of the jury instruction given in *Love. See State v. Duke*, 335 N.W.2d 511, 515 (Minn.1983); *State v. Bland*, 337 N.W.2d 378, 384 (Minn. 1983). Until 1977, however, trial courts were provided a model instruction stating that there is no duty to retreat in self-defense cases. The fact that such an instruction was used at least intermittently through 1977 highlights the depth of confusion surrounding the duty to retreat in self-defense cases and undermines the state's contention that the duty to retreat is clearly inscribed in Minnesota self-defense law.

attaching to self-defense occurring within the home is not directly before us, it is neither necessary nor appropriate to attempt to fully explicate when a duty to retreat might or might not apply to self-defense within the home. It is sufficient to note that where the circumstances of a case support a defense of dwelling claim based on the prevention of a felony in the home consistent with *Pendleton,* the duty to retreat does not apply whether the defense is labeled defense of dwelling or self-defense. Courts and counsel should look to circumstances alleged to give rise to the defense, rather than the labels attached.[6]

We emphasize that a person claiming defense of dwelling is still subject to strictures insuring the reasonableness of his or her behavior. Defense of dwelling and self-defense within the dwelling serve a defensive and not offensive purpose, and do not confer a license to kill or to inflict great bodily harm merely because the offense occurs within the home. *See Gainer,* 391 A.2d at 862. It may be more reasonable for a person to advance towards or retreat from a danger within his or her home in different circumstances, and that decision should be left to the jury. When faced with a defense of dwelling claim, the jury must determine (1) whether the killing was done to prevent the commission of a felony in the dwelling, (2) whether the defendant's judgment as to the gravity of the situation was reasonable under the circumstances, and (3) whether the defendant's election to defend his or her dwelling was such as a reasonable person would have made in light of the danger to be apprehended. *See Pendleton,* 567 N.W.2d at 270 (relying on *State v. Boyce,* 284 Minn. 242, 253, 170 N.W.2d 104, 112

(1969)). *See also Gainer,* 391 A.2d at 862–63 (no duty to retreat when using deadly force in defense of dwelling or self-defense in the home so long as actions meet other requirements of defense of dwelling or self-defense).

As there is no duty to retreat in defense of dwelling claims, the trial court's instruction to the jury and its answer to the jury's question were in error. Appellant is entitled to a new trial unless it may be said beyond a reasonable doubt that the trial court's instruction had no significant impact on the verdict. *State v. Olson,* 482 N.W.2d 212, 216 (Minn.1992).

In this case, the trial court first explicitly stated that the duty to retreat attached to a defense of dwelling claim. Further, when the jury asked for clarification on whether there was a duty to retreat when acting in self-defense in one's abode,[7] the trial court answered that there is a duty to retreat. One hour later the jury returned a guilty verdict. On this record, we cannot conclude, beyond a reasonable doubt, that the court's erroneous defense of dwelling instruction did not significantly impact the verdict.

Accordingly, this case is reversed and remanded for a new trial.

---

6. We also do not address whether the duty to retreat should apply to self-defense cases occurring within the home which involve co-occupants of the home. Such cases raise issues which have not been briefed by the parties and are not now properly before the court.

7. The trial court's instructions to the jury referred to defense of dwelling as self-defense in the place of abode.