STATE OF MINNESOTA

IN SUPREME COURT

A12-2065

Court of Appeals                                                            Lillehaug, J.


State of Minnesota,

              Respondent,

vs.                                                                    Filed:  August 20, 2014
                                                                       Office of Appellate Courts
Daniel Joseph Devens,

              Appellant.


_____


Lori Swanson, Attorney General, Michael Everson, Assistant Attorney General, Saint Paul, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Sharon E. Jacks, Assistant State Public Defender, Saint Paul, Minnesota, for appellant.


_____

S Y L L A B U S

The district court did not err when it instructed the jury that appellant, while in the hallway of his apartment building, had a duty to retreat if reasonably possible before acting in self-defense against a non-resident of the building.

Affirmed.

## O P I N I O N

LILLEHAUG, Justice.

At his trial for third-degree assault, appellant Daniel Joseph Devens claimed that he acted in self-defense during a hallway confrontation with a non-resident of his apartment building. Over Devens' objection, the district court instructed the jury that Devens had a duty to retreat if reasonably possible before acting in self-defense. After the jury found him guilty of third-degree assault and the lesser included offense of fifth-degree assault, Devens appealed. The court of appeals affirmed. We granted review on the issue of whether the duty to retreat applies when a defendant claims to have acted in self-defense in a hallway of his apartment building against a non-resident of the building. Because we conclude that Devens had a duty to retreat if reasonably possible, we affirm.

## I.

Around midnight on October 14, 2011, Devens heard loud noises coming from the hallway of his secured apartment building in Waseca. He opened his apartment door to investigate. Approximately 35 feet down the hallway, Devens saw an individual—whom he later learned was J.P.—knocking on a neighbor's apartment door. Devens did not recognize J.P. but he knew that J.P. did not live there.[1]

---

[1]     J.P. was able to gain access to the secured apartment building because the front door was propped open. He had made plans to stay overnight with a friend who lived in the building.

Devens stepped out of his apartment and asked J.P. to leave. J.P. did not. Devens then approached J.P. and again asked J.P. to leave. This time, J.P. complied. The two men walked down the hallway toward the exit.

Devens and J.P. offer conflicting accounts of what happened next. According to Devens, without warning, J.P. attempted to punch him and Devens simply defended himself. But according to J.P., Devens started the fight. Devens allegedly "jumped" J.P. from behind and hit J.P. on his back, shoulders, and head. During the struggle, J.P. fell down a flight of stairs and lost consciousness.[2]

When police arrived, Devens admitted that he had fought with J.P. But he maintained that he only used force in order to protect himself.

After an investigation, the State charged Devens with first-degree assault, in violation of Minn. Stat. § 609.221, subd. 1 (2012), and third-degree assault, in violation of Minn. Stat. § 609.223, subd. 1 (2012). The first-degree assault charge was dismissed for lack of probable cause. On the third-degree assault charge, Devens' defense theory was self-defense.

Before trial, the State requested that a duty-to-retreat instruction accompany any self-defense jury instruction. The State argued that because Devens was in the hallway of his apartment building during the confrontation with J.P., not in his own apartment, he had a duty to retreat if reasonably possible before acting in self-defense. Devens

---

[2] As a result of the confrontation, J.P. suffered head injuries. He was intubated and airlifted to North Memorial Medical Center. But he did not sustain any permanent injuries.

3

disagreed.  He argued that, under the "castle doctrine," he had no duty to retreat because the hallway of his secured apartment building was his home for the purpose of self-defense.

The district court agreed with the State.  The district court reasoned that, unlike when one acts in self-defense in his or her home, in this case there was somewhere safer for Devens to go: his own apartment.  In other words, the district court decided that the hallway was not Devens' home for the purpose of self-defense.

At trial, Devens testified that he acted in self-defense.  Before the case was submitted to the jury, and consistent with a prior order, the district court instructed the jury that "[t]he legal excuse of self-defense is available only to those who act honestly and in good faith.  This includes the duty to retreat or avoid the danger if reasonably possible."  In so doing, the district court followed the duty-to-retreat instruction from CRIMJIG 7.08.[3]  *See* 10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal*, CRIMJIG 7.08 (5th ed. 2006).

The jury found Devens guilty of third-degree assault and the lesser included offense of fifth-degree assault.  The district court stayed imposition of sentence and placed Devens on probation.

---

[3]  The district court also gave the jury the general self-defense instruction from CRIMJIG 7.06.  That instruction provides, in relevant part, that when acting in self-defense, a "person may use all force and means that the person reasonably believes to be necessary and that would appear to a reasonable person, in similar circumstances, to be necessary to prevent an injury that appears to be imminent."  *See* 10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal*, CRIMJIG 7.06 (5th ed. 2006).

4

Devens appealed. Among other things, he argued that the district court erred in giving a duty-to-retreat instruction. In an unpublished opinion, the court of appeals affirmed. *State v. Devens*, No. A12-2065, 2013 WL 6389594, at *1 (Minn. App. Dec. 9, 2013). The court of appeals concluded that the district court did not abuse its discretion in giving a duty-to-retreat instruction because "there was somewhere safer for [Devens] to go at the time of the altercation . . . ." *Id.* at *3.

We granted Devens' petition for further review on the duty-to-retreat issue. We denied review on all other issues.

## II.

Whether the duty to retreat applies in this case is a question of law that we review de novo. *See State v. Ndikum*, 815 N.W.2d 816, 818 (Minn. 2012). We afford district courts significant discretion to craft jury instructions. *State v. Peou*, 579 N.W.2d 471, 476 (Minn. 1998). But a jury instruction is erroneous if it materially misstates the law. *State v. Pendleton*, 567 N.W.2d 265, 269-70 (Minn. 1997).

## A.

In Minnesota, a person may act in self-defense if he or she reasonably believes that force is necessary and uses only the level of force reasonably necessary to prevent the bodily harm feared. *State v. Glowacki*, 630 N.W.2d 392, 399 (Minn. 2001). This right of self-defense is codified at Minn. Stat. § 609.06, subd. 1(3) (2012). That subdivision provides, in relevant part, that reasonable force may be used upon another without the other's consent "when used by any person in resisting or aiding another to resist an offense against the person . . . ." Minn. Stat. § 609.06, subd. 1(3).

We have read Minn. Stat. § 609.06, subd. 1(3), to include four elements:

> (1) the absence of aggression or provocation on the part of the defendant; (2) the defendant's actual and honest belief that he or she was in imminent danger of . . . bodily harm; (3) the existence of reasonable grounds for that belief; and (4) the absence of a reasonable possibility of retreat to avoid the danger.

*State v. Basting*, 572 N.W.2d 281, 285-86 (Minn. 1997). Once a defendant meets the burden of "going forward with evidence to support a claim of self-defense," the State bears the burden to disprove, beyond a reasonable doubt, one or more of the four elements. *Id.* at 286.

The fourth element of self-defense—the duty to retreat—is at issue in this case. Generally, the law requires that a person retreat if reasonably possible before acting in self-defense. *Glowacki*, 630 N.W.2d at 399. This is because the law presumes that there is somewhere safer to go—home. *Id.* at 401. As a result, if a person is outside his or her home and can safely retreat, then the person's use of force is unreasonable as a matter of law. *Id.* at 399-400; *see also State v. Buchanan*, 431 N.W.2d 542, 545-46, 548 (Minn. 1988) (noting that the defendant had a duty to retreat before acting in self-defense because the shooting took place in the parking lot adjacent to his apartment).

However, under the so-called "castle doctrine," a person need not retreat from his or her home before acting in self-defense.[4] *State v. Johnson*, 719 N.W.2d 619, 622, 629

---

[4] Devens uses the phrase "castle doctrine" to refer to the concept that a person need not retreat from his or her home before acting in self-defense. We have used the phrase in a defense-of-dwelling case, *State v. Hare*, 575 N.W.2d 828, 832 (Minn. 1998), and have referred to the home as a "castle" while discussing the duty to retreat in a self-defense case, *State v. Carothers*, 594 N.W.2d 897, 901 (Minn. 1999).

(Minn. 2006) (noting that the defendant did not have a duty to retreat before acting in self-defense because the shooting took place in the upstairs bedroom of his home); *State v. Carothers*, 594 N.W.2d 897, 900 (Minn. 1999) ("[E]arly Minnesota caselaw rejected a duty to retreat in cases of self-defense occurring in one's home."). After all, the home is "a place critical for the protection of the family." *Carothers*, 594 N.W.2d at 901. One's home is a "sanctuary." *Id.* at 900. "Requiring retreat from the home before acting in self-defense would require one to leave one's safest place."[5] *Glowacki*, 630 N.W.2d at 401.

B.

Here, Devens asks that we extend the castle doctrine to the hallway of his apartment building. We decline to do so.

As New York's highest court aptly recognized, "the determination of whether a particular location is part of a defendant's dwelling [for the purpose of self-defense] depends on the extent to which defendant (and persons actually sharing living quarters with defendant) exercises exclusive possession and control over the area in question." *People v. Hernandez*, 774 N.E.2d 198, 203 (N.Y. 2002). Stated differently, the castle doctrine extends to "a house, an apartment or part of a structure where defendant lives and where others are ordinarily excluded—the antithesis of which is routine access to or use of an area by strangers." *Id.*; *see also People v. Aiken*, 828 N.E.2d 74, 79 (N.Y.

---

[5] Importantly, "the lack of a duty to retreat does not abrogate the obligation to act reasonably when using force in self-defense." *Glowacki*, 630 N.W.2d at 402. Both the use of force and the level of force must be reasonable. *Id.*

2005) (holding that the defendant had a duty to retreat from the doorway between his apartment and the apartment hallway because that area functioned as a "hybrid private-public space").

Devens enjoyed a significant property interest in his own apartment. For example, he could exclude even his landlord unless the landlord had a reasonable business purpose for entering and made a good faith effort to notify Devens of the entry. *See* Minn. Stat. § 504B.211, subd. 2 (2012). By contrast, Devens did not exercise exclusive (or near-exclusive) possession and control over the apartment hallway. The hallway was a shared space owned by Devens' landlord. As a tenant, Devens was required to tolerate, at a minimum, the presence of other tenants, their guests, the landlord, and the landlord's guests and agents.

Because Devens did not exercise exclusive (or anything close to exclusive) possession and control over the apartment hallway, it was not his safest place or his sanctuary. Without these essential characteristics, *see, e.g.*, *Carothers*, 594 N.W.2d at 900 (noting that early Minnesota case law was "fiercely protective of the home as a sanctuary"), the apartment hallway was not Devens' castle for the purpose of self-defense.

Moreover, extending the castle doctrine to the apartment hallway might encourage, rather than discourage, unnecessary and potentially deadly confrontations. *State v. Shippey*, 10 Minn. 223, 232 (Gil. 178, 184) (1865) ("Where the [defendant] has not retreated from or attempted to shun the combat, but has . . . unnecessarily entered into

it, his act is not one of self-defense."). Indeed, in this very case, Devens left the relative safety of his own apartment to confront J.P. in a non-exclusive space owned by another.

Nevertheless, Devens argues that he did not have a duty to retreat from the apartment hallway because his apartment building was (or was supposed to be) a secured building. We disagree. The safety benefit of a locked front door does not mean that all of the non-exclusive space behind that locked door—including lobbies, hallways, stairs, elevators, laundry rooms, pools, and mailrooms—is a sanctuary critical for the protection of self and family. *See Hernandez*, 774 N.E.2d at 203 ("Whether a person is entitled to the benefit of the 'no duty to retreat' rule should not turn on how well protected the area in question is at the time of the attack.").

Devens also argues that the definition of "[d]welling" from Minnesota's burglary statute should apply in this case. Although that definition is broad enough to include an apartment hallway, *see* Minn. Stat. § 609.581, subd. 3 (2012), it is expressly limited (and tailored) to the crime of burglary. Minn. Stat. § 609.581, subd. 1 (2012). And to the extent that Minnesota's burglary statute and the castle doctrine share a respect for the sanctity of the home, they do so for somewhat different reasons. The burglary statute criminalizes behavior even when a lessee's immediate personal safety is not at risk. *See* Minn. Stat. § 609.582, subd. 2 (2012). But in the self-defense context, the home is important precisely because it functions as the resident's safest place when threatened with bodily harm.

Finally, Devens cites three cases—*Beard v. United States*, 158 U.S. 550, 559-60 (1895); *State v. Gardner*, 96 Minn. 318, 328, 104 N.W. 971, 975 (1905); and *State v.*

9

*Penkaty*, 708 N.W.2d 185, 207 (Minn. 2006)—to argue that the "home" is defined broadly to include not only one's living quarters, but also the property connected to and surrounding it. But the cases cited by Devens are distinguishable because, among other reasons, the defendants in those cases exercised a greater degree of exclusive possession and control over the areas in question than Devens did here. It is not necessary for us to resolve for all time the contours of what is "home" for us to conclude, under these facts, that Devens had a duty to retreat from the hallway.[6]

Based on this analysis, the district court did not err when it instructed the jury that, before acting in self-defense, Devens had a duty to retreat, if reasonably possible, while in a non-exclusive hallway of his apartment building.

Affirmed.

---

[6] In so concluding, we also conclude that the court of appeals' citation to Fourth Amendment case law is of limited relevance to the question presented in this case.